## MATTHEWS *v.* KIMBALL.

### Opinion delivered February 1, 1902.

1. IMPROVEMENT DISTRICT—PUBLIC PARK.—Under Sand. & H. Dig., § 5321, providing that "the council of any city of the first or second class, or any incorporated town, may assess all real property within such city, or within any district thereof, for the purpose of grading or otherwise improving streets and alleys, constructing sewers or making any local improvements of a public nature," a city council is authorized to lay off the whole city into an improvement district for the purpose of acquiring and improving a public park. (Page 462.)

2. PUBLIC PARK—ADJOINING PROPERTY.—Const. 1874, art. 19, § 27, authorizing assessments on real property for local improvements in towns and cities, "to be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected," does not inhibit a city council from making assessments for a public park upon property which does not actually touch the park grounds. (Page 464.)

3. IMPROVEMENT—BENEFIT.—The inclusion of a tract of land in an improvement district by a city ordinance is *prima facie* evidence that it will be benefited by the proposed improvement. (Page 466.)

4. ESTOPPEL—PETITION FOR IMPROVEMENT.—A property owner who has joined in the petition for the creation of an improvement district or has petitioned for the assessments is estopped from calling in question the organization of the district or the validity of the assessments. (Page 467.)

Appeal from Pulaski Chancery Court.

EDWARD B. PEIRCE, Special Chancellor.

Affirmed.

#### OPINION OF SPECIAL CHANCELLOR.

These cases were consolidated, and have been submitted together. It is agreed that the issues in each case shall be identical, and that any amendment to the pleadings necessary to effectuate this agreement shall be treated and considered as made. The cases were submitted upon the pleadings and an agreed statement of facts.

It appears that on the 24th day of May, 1892, ten resident owners of real property in the city of Little Rock, and within the district to be affected, petitioned the city council to take the necessary steps toward the making of local improvements therein in the way of acquiring, improving and maintaining a city park, to be located in the said city and commonly known as 'Arsenal Grounds,' and bounded, etc., and within the limits of the proposed district. On the same day, and in accordance with said petition, the city council passed an ordinance laying off the "whole of the territory comprised in the city of Little Rock" into an improvement district, and designated the same as the "City Park District." That within five days after the passage of the ordinance it was published as required by law. That, within three months after the publication of said ordinance, a majority in value of the owners of real property within the district presented a petition praying that such improvements be made, designating the improvements, and that the costs thereof be assessed and charged upon the real property situated therein. That commissioners were duly appointed and qualified, and immediately formed plans for the improvements within the designated district, and reported their plans to the council. Upon the receipt of said report, the council passed an ordinance assessing the cost of acquiring, purchasing and improving the grounds mentioned in said report as a public park upon the real property in said district. That said ordinance was

duly and within proper time published after its passage. That there has been realized from said assessment about the sum of $75,000, of which sum $35,000 was used in purchasing 1,150 acres of ground in Pulaski county, situated on what is known as Big Rock, and adjacent to said city, which lands were given in exchange to the United States government for the park grounds, and that this method of acquiring the title to said park was contemplated and so understood at the time the petition for the assessment was made, and $40,000 has been expended in improving and maintaining said park, removing useless structures, grading, laying out drives and walks; planting trees and shrubs, ornamental trees and flowers, making an artificial lake, constructing a stable and band stand, and otherwise improving, beautifying and benefiting the park. There was also introduced in evidence a statement showing the exact distance of each piece of property involved in this suit from the park, and showing, also, the assessed valuation of the same for the years 1891, 1893 and 1895. This statement was objected to as incompetent.

On the 5th day of May, 1900, E. D. Matthews, on behalf of himself and such others as might see fit to join him, filed in this court his bill in equity, seeking to enjoin the commissioners from collecting any further assessments under the ordinance. On the 4th day of December, 1900, the board of commissioners filed separate suits against J. E. England, Edward Fitzgerald and F. M. Fulk et al., for the purpose of enforcing the collection of the assessments then in arrears on the property owned by them. These defendants filed their answers, denying the right to collect the assessment mentioned in the complaint, and in these answers and in the bill in equity to enjoin the commissioners the following reasons were urged against the validity of the assessments: First, that the ordinance was not published within five days of its passage, as required by law; second, said improvements were not beneficial to the property, nor contiguous or adjoining thereto; third, the object of said ordinance was to raise money to purchase a tract of land far beyond the limits of the district, and in a manner not provided by law; fourth, because said park has been fully paid for, and there is no authority in the law to collect a further tax; fifth, because the district was not duly created and organized under the laws of Arkansas and the ordinances of the city of Little Rock, and for the further reason that there was no

legal ordinance making the assessment; sixth, because the city of Little Rock had no power or authority, under the constitution and laws of Arkansas, to pass any such ordinance; seventh, it was also urged and argued, though not specifically set up anywhere, that the assessment was in violation of the fifth and fourteenth amendments to the federal constitution.

The first and third objections to the validity of the ordinance were abandoned, and I am therefore relieved of the necessity of adverting to them. All the other questions, however, were presented with great force, and are earnestly insisted upon as being valid objections to the validity of the assessments in question.

The case of *Norwood* v. *Baker*, 172 U. S. 269, seems to have invited a wholesale and vigorous attack upon the validity of assessments of the character now under consideration. Several of these cases from various sections of the country found their way almost simultaneously into the supreme court of the United States, and on the 29th day of April of this year that tribunal made its deliverance in all of these cases, and in each one the validity of the assessments, in so far as it was contended that they were in violation of the federal constitution, was upheld, and the assessments were enforced. Under the authority of these cases, it is unnecessary for me to advert to the constitutional objections which have been urged to the assessments in question, for these decisions, to my mind, conclude the whole question. *French* v. *Barber Asphalt Paving Company*, 181 U. S. 324, and other cases decided at the same time, reported in 181 U. S. 371, 389, 394, 396, 399, 402, 404.

It has been decided that the act of 1881 authorizing these improvement districts is valid, so far as our state constitution is concerned. *Little Rock* v. *Board of Improvement*, 42 Ark. 161; *Ahern* v. *Board of Improvement District No. 3, of Texarkana*, 69 Ark. 68, 61 S. W. 577.

Likewise, I am of the opinion that the position that the said improvements were not beneficial to the property, nor contiguous or adjoining thereto, is not established. In the case of *Little Rock* v. *Katzenstein*, 52 Ark. 107, the court said: "Two questions are presented for determination: First, what is property adjoining the locality to be affected? Second, to what extent is the action of the city council in placing lands in an improvement district conclusive of the fact that it is 'property adjoining the locality to

be affected?'" After discussing these two propositions the court answered them as follows: "We conclude, therefore, in answer to the two queries originally propounded: First, that property adjoining the locality to be affected is any property adjoining or near the improvement which is physically affected, or the value of which is commercially affected, directly by the improvement, to a degree in excess of the effect upon the property in the city generally. Second, that the action of the city council in including property in an improvement district is conclusive of the fact that it is adjoining the locality to be affected, except when attacked for fraud or demonstrable mistake."

It is claimed that the statement introduced showing the exact distance of each piece of property involved in this suit from the park, and also showing the assessed value of the same for the years 1891, 1893 and 1895, is sufficient evidence of the fact that the property was not benefited by the improvement, nor adjoining the locality to be affected. I am unable to agree with this position. There is no charge of fraud, and, from the very nature of the benefits to be derived from a public park, it certainly does not show that there was a demonstrable mistake in including the property in the district. It proves nothing as to benefits, because the beneficial effects from the establishment of the park may have offset other depressing defects existing during the same period, and it does not even tend to show that no benefits will accrue. I do not think the statement is competent, but, admitting it for what it is worth, it does not establish either fact which was intended to be shown by it. I think it would require strong evidence to show that a park like this one was not beneficial to the whole property in the city, and surely no court can say, as a matter of law, that the public park is not or will not be beneficial to the city. In the case of *Wilson* v. *Lambert,* 166 U. S. 611, Justice Shiras, in speaking of the value of a park to Washington City, says: "Whatever tends to increase the attractiveness of the city of Washington as a place of permanent or temporary residence will operate to enhance the value of the private property situated therein and adjacent thereto." Without enumerating any of the many beneficial effects of a park to a city, it suffices to say, in a general way, that there is no character of public improvement the benefits of which are so widely and generally diffused throughout the whole city as a public park; and, as the burden of proof rests upon those

attacking the assessments, I am clear that this statement is not sufficient to overcome it. *Kansas City, P. & G. R. Co.* v. *Imp. Dist. No.·1 of Siloam Springs,* 68 Ark. 376.

The fourth objection urged to the validity of the ordinance is that the park has been fully paid for, and there is no authority in the law to collect a further tax. In support of this proposition I am referred to the case of *Pine Bluff Water Company* v. *Sewer District,* 56 Ark. 205. The case does not support that contention. The object of the organization of that district was the construction of sewers and paying for the same. After the board had done that, it seems that it, in addition thereto, undertook to make a contract for the sewer district for water furnished for flushing the sewers, which was clearly outside of the purpose for which the district was formed. In this case the petition praying for the formation of the district was to acquire, purchase and improve a city park. The petition asking that the assessment be made asked the .council to make an assessment for the purpose of acquiring, purchasing and improving the grounds into a public park. The statement of facts shows that the arsenal grounds were not in a condition to be used as a public park when first acquired, and the improvement of the same, after the purchase, was just as essential to the establishment of a park as was the purchase of the ground itself. The petitioners asked that an assessment not to exceed 1 per cent. of the assessed value of the property be levied upon all the real property within the district for the purpose of making the improvements, and it was estimated (and it was easy for any person to make the calculation before the assessment, as the data was accessible to all) that an assessment of 1 per cent. upon the assessed value of the property would yield about $80,000. So that the commissioners, the city council and the property owners themselves were of the opinion at the time of the assessment that at least $80,000 would be necessary to purchase and improve these grounds into a public park, and the mere fact that the commissioners may have handled the funds judiciously, and made a much better showing, up to this time, than was anticipated, does not, in my opinion, entitle those who are objecting to the assessment to now say that they think the park is improved as much as it ought to be improved. The question of the amount of improvement is largely a matter of taste. Some persons, perhaps, would be content with its present condition. Others, perhaps,

will not be content with it unless twice $80,000 is spent on it in further improving and beautifying it. But I think that under the ordinance the commissioners have a right to collect and expend at least $80,000, or as much as the assessment will yield, in the way of purchasing and improving the park.

The fifth and sixth objections, I think, can properly be considered together, and these go to the question as to whether the city of Little Rock had any authority in the first instance to create an improvement district for the purpose of acquiring and improving a park. In other words, it is contended that a public park is not a local improvement of a public nature contemplated by section 5321 of Sandels & Hill's Digest, which reads as follows: "Section 5321. The council of any city of the first class or second class, or any incorporated town, may assess all real property within such city, or within any district thereof, for the purpose of grading or otherwise improving streets and alleys, constructing sewers or making any local improvements of a public nature, in the manner hereinafter set forth."

It is contended that the specific words, "streets," "alleys" and "sewers," used in that section, must limit and control the meaning that is to be given to the general expression, "making any local improvements of a public nature." As a general proposition, the rule of construction contended for is correct, but it is not universal or without exception. An examination of the general powers conferred upon cities of the first class, as found in Sandels & Hill's Digest, shows that they had authority conferred upon them, among other things, to lay off, open, widen, straighten and establish, to improve, keep in order and repair, and to light streets, alleys, public grounds, wharves, landing places and market places; to open and construct and keep in order and repair sewers and drains; to provide a supply of water by the construction of wells, pumps, cisterns, reservoirs and waterworks; and to provide for lighting the streets and alleys of the city by gas or otherwise. To make these improvements, citizens were authorized to use the general revenue of the city. In 1874 a new constitution was adopted in this state. That constitution so limited and restricted the right of municipal corporations to levy and collect taxes that it is a matter of common knowledge that the five-mill tax has not been at all adequate to make any improvements of any extensive character. Indeed, the general revenue has hardly been sufficient

to meet the current running expenses of our municipal corporations. After the adoption of this constitution, and up to this time, it was and is a much-mooted question as to how municipal corporations could and can devise ways and means, not in conflict with our constitution, to raise the necessary revenue to provide such conveniences and make such improvements as are required by the growth and development of our municipal corporations. In 1881 the legislature passed the act under which the park district was formed. My opinion is that it was the purpose of that act to afford municipal corporations some relief in the way of assisting them to make improvements authorized under the general powers, which they were unable to make from the general revenue of the city. If we give effect to the contention made against the ordinance in this respect, the general words following the specific words would not mean anything, because the specific words, "streets," "alleys" and "sewers," exhausted the whole genus, and there are no improvements of the same general character or class which cities could make which would fall within the general term following the specific words. In other words, they left nothing which could be called *ejusdem generis.* Endlich, Int. Stat. § 409, says: "Further, the general principle in question [referring to the principle here involved] applies only where the specific words are all of the same nature. Where they are of different genera, the meaning of the general word remains unaffected by its connection with them." Proceeding, then, he gives an illustration, and concludes: "Here, the several particular words * * * exhausted whole genera; and the last general words must be understood, therefore, as referring to other genera." Black, in his work on Interpretation of Laws, p. 143, in speaking on this same subject, says: "The general object of an act sometimes requires that the final general term shall not be restricted in meaning by its more specific predecessors." Sutherland, Stat. Const., p. 360, says: "The enumeration of particular things is sometimes so complete and exhaustive as to leave nothing which can be called *ejusdem generis.* If the particular words exhaust a whole genus, the general words must refer to some larger genus."

This view is further supported by the fact that the supreme court upheld the validity of two ordinances of the city of Siloam Springs which formed the whole city into improvement districts for the purpose of establishing waterworks and an electric light

plant. It is true that in the decision they say that the situation is relieved of doubt by the fact that the legislature in the act of 1893 specifically used the words "electric lights and waterworks." But an examination of that act will show that the legislature did not extend or enlarge the original authority conferred upon cities and towns to make these improvements, but simply said, "in case of the construction of waterworks or gas or electric light works by an improvement district," the city should have power to operate, etc. It will thus be seen that this act amounted to nothing more or less than a legislative interpretation of the act of 1881 to mean that the general words used in section 5321 included electric lights and waterworks, which construction of the act, though not binding upon the supreme court, was accepted and approved by them; and if the general terms were broad enough to include electric lights and waterworks, then the whole contention that these general words are to be limited by the specific ones which precede must fail. And I am unable to see why a public park would not be just as much authorized by the act as an electric light plant or waterworks. Section 5141 of Sandels & Hill's Digest specifically authorizes municipal corporations to establish, improve and keep in order and repair public grounds. Our supreme court in *Crane v. Siloam Springs,* 67 Ark. 30, used the following language: "Provisions for local conveniences, like water, light, public parks for recreation and other public accommodations of the same kind, are some of the matters which are furnished or provided for by municipal corporations in their *quasi*-private capacity, in which they act, not as an agency of the state, but exclusively for the benefit of their own inhabitants. It is in respect to such matters of local concern that the largest freedom of action has been allowed municipal corporations." In the Siloam Springs case the contention was made, and is made here, that, as the power to provide a supply of water from the general taxes has been expressly conferred on cities, this, by implication, forbids them from making special assessments for that purpose. The court there said that the argument would be strong if the legislature had not specifically used the words 'waterworks and electric lights.' They then proceeded to state that that was one of the reasons upon which the decision of *Morgan Park* v. *Wiswall,* 158 Ill. 262, was based, which held an ordinance invalid which attempted to form the whole city into an improvement district to establish waterworks. But an examina-

tion of that case discloses that under the laws of Illinois municipal corporations were, in addition to the authority conferred upon them to collect a general revenue for general purposes, also authorized to collect a special tax to be used exclusively for the establishment of waterworks. And in that case it also appears that the same court held that a local improvement could not be co-extensive with the city limits, but must be confined to some particular locality of the city; but our court, in the Siloam Springs case, holds that a "local improvement" may be co-extensive with the city limits. So that I am of the opinion that the case of *Crane* v. *Siloam Springs,* taken as a whole, is an authority in favor of, and not against, the proposition that a park is a local improvement contemplated by section 5321, Sandels & Hill's Digest.

The agreed statement of facts states that the tax to be collected is to be used "wholly for maintenance and improvement of the park," and it was contended that no part of the tax could be used for the maintenance, and therefore the assessments could not be enforced. Granting that to use the money for maintenance would be wholly illegal, that does not affect the validity of the assessment. The commissioners will be liable for any misappropriation or misuse of the funds, and, in any event, the status of these cases before the court at this time does not warrant any relief in that respect.

The result is, therefore, that a decree will be entered denying the petition for an injunction in the case of *Matthews et al.* v. *The Commissioners,* and in the other cases a decree will be entered condemning the lands, and it will be further directed that if the tax, penalty and costs of these suits shall not be paid within ten days, so much of the property as will be necessary to pay the assessment, costs and penalty, will be sold for that purpose upon twenty days' notice, said notice to be given in the same manner as notices of sales under execution.

*Rose & Coleman* and *Ratcliffe & Fletcher,* for appellants.

A park is not a public improvement, within the meaning of the act of March 22, 1881, authorizing assessments by ordinance "for the purpose of grading or otherwise improving streets and alleys, constructing sewers, or making any local improvements of a public nature." General words, following specific terms *ejusdem generis,* are limited to things or subjects of like nature

and quality to those designated by the particular words. Endlich, Int. Stat. § 405 *et seq.;* 61 Ark. 502. *Cf.* 67 Ark. 40. This statute is to be strictly construed. 25 Am. & Eng. Enc. Law, 507; 59 Ark. 360. Even if an improvement district could be lawfully created for making a park, two requisites must concur before the assessment on any particular lot can be enforced. *First,* the lot must *adjoin* the park; and, *second,* it must be specially benefited thereby. The word *adjoining* signifies an actual contact. Webster's Dict.; 6 Mackey, 21; Bouv. Dict.; And. Law Dict.; Crabbe's Eng. Syn.; 52 N. Y. 395. Special burdens can only be imposed where special benefits are to accrue. 59 S. W. 248; 48 Ark. 382; 172 U. S. 269. In the absence of special benefit no assessment can be collected. 59 S. W. 248; 77 N. W. 968. Upon the completion of the park, the authority of the commissioners ceased, because the park became the property of the city, and should be maintained out of the general revenue. An assessment for "maintaining" the park after it is once made cannot be enforced. 59 Ark. 360; 56 Ark. 205; 50 Ark. 116, 132; 61 Ark. 79; 98 Fed. 369; 92 Tex. 685. The act of March 22, 1881, and the ordinance thereunder, are void because, in requiring the assessment to be *ad valorem* regardless of the question and degree of benefits, they are violative of the last clause of the Fifth and Fourteenth Amendments, Const. United States. 172 U. S. 269; 106 Fed. 103; 103 Fed. 357; 91 Fed. 37; 94 Fed. 409; 98 Fed. 166; 100 Fed. 588; 98 Fed. 361; 92 Tex. 685; 98 Fed. 849; 25 Am. & Eng. Enc. Law, 469; 61 S. W. 577.

*Whipple & Whipple,* for appellees.

Parks are analagous to streets, and taxes may be levied to support them. 49 S. W. 320. Private property may be condemned for parks, just as for streets. 168 U. S. 599. The phrase "or any local improvement of a public nature" embraces other classes of improvements than those mentioned in the preceding clause, and was intended by the legislature to name an entirely new class or genus. 54 Ark. 611; 67 Ark. 30. The action of the city council in including any property in the district is conclusive of the fact that it is *adjoining* the locality to be affected by the improvement, in the absence of fraud or mistake. 52 Ark. 107; 1 Dill. Mun. Corp. § 94. Its decision upon the question of benefits is also conclusive. 125 U. S. 339; 11 Rose's Notes, 525. Courts can inter-

fere only in very clear cases. 59 S. W. 248. Assessments for parks should not be confined to property in the immediate vicinity. 54 Mo. 458; 58 Mo. 175; 2 Dill. Mun. Corp. § 598. Absolute equality of benefits commensurate with taxation cannot be expected. 32 Ark. 31. The burden of showing no benefits rests on the property owners. 1 Dill. Mun. Corp. § 572; 59 S. W. 248; 21 Ark. 60. Appellants are estopped. Big. Estop. 571; 1 Bush, 578; 15 Bush, 548; 15 Wall. 146; 31 Ia. 356, S. C. 7 Am. Rep. 142; 181 U. S. 371.

BUNN, J. C. The appellants, by this proceeding, seek to enjoin the defendants, as commissioners of the City Park Improvement District of Little Rock, from proceeding further to collect certain assessments levied upon their real property in said district,—among them the last assessment made under the ordinance of the city council.

It appears to be admitted in the agreed statement of facts that the district was properly organized on the petition of ten resident landowners, and that, within proper time after due notice given, the district was formed, and commissioners appointed, and that they in due time qualified, and made the necessary plans and specifications and estimates of the costs of the improvement, and that the city council, upon the petition of a majority in value of the owners of property in the district, passed the necessary ordinance assessing the real property as required by law; and that, in fact, the district was properly organized, and the assessments made. The Hon. E. B. Peirce, sitting as special chancellor, heard the cause, and decreed against the appellants on all the controverted points, and they appealed to this court.

One of the more serious questions raised by the proceedings in the case, is whether or not the statute includes public parks, and such like, as improvements for which assessments upon the real estate of a district may be made by the city council in the manner provided for local improvements.

The appellants contend that under the familiar rule of construction, which confines the meaning of additional descriptive expressions to the class to which preceding specific terms and names belong, the improvements contemplated by the act are only streets, alleys, sewers and such· like or similar improvements. This is the doctrine of *ejusdem generis.* It would be difficult to say what other improvements there are or can be in a town similar to streets,

alleys and sewers, and the contention of appellees that these descriptive names exhaust the particular class, we think, is well founded, and that public parks are not of that class, though it is true parks contain streets and drives, but these are not to be used for all purposes for which ordinary streets are intended and may be used; and still more might be said to distinguish parks from sewers, and take them out of the class to which the latter belong.

The statute on the subject, digested as section 5321 of Sandels & Hill's Digest, is as follows, to-wit: "The council of any city of the first or second class, or any incorporated town, may assess all real property within such city, or within any district thereof, for the grading or otherwise improving streets and alleys, constructing sewers or making any local improvements of a public nature, in the manner hereinafter set forth." This language is certainly broad enough to include any kind and class of improvements which will enhance the value of the real estate of the particular district; that is, benefit it. In construing this statute, this court said in *Crane* v. *Siloam Springs,* 67 Ark. 36: "Provisions for local conveniences, like water, light, public parks for recreation, and other public accommodations of the same kind, are some of the matters which are furnished or provided for by municipal corporations in their *quasi*-private capacity, in which they act, not as an agency of the state, but exclusively for the benefit of their own inhabitants. It is in respect to such matters of local concern that the largest freedom of action has been allowed municipal corporations." "The case," says Judge Cooley, "must be extraordinary and clearly exceptive to warrant any court in declaring that the discretion has been abused, and the legislative authority exceeded." Cooley, Taxation (2d E.), §§ 145, 688, 689; *State ex rel. Bulkeley* v. *Williams,* 68 Conn. 131; *Williams* v. *Eggleston,* 170 U. S. 304.

The only limitation as to the character of the improvement is that it must be a local improvement and of a public nature; that is, local to the city and the inhabitants thereof, and public to the extent that it shall be free to the public under such proper regulations as may be adopted for its control, management and preservation, by the city council. The text-books and their citations sustain the doctrine that public parks are proper subjects of city taxation; and it is even held that it is proper to call into exercise the right of eminent domain, in order to acquire the necessary ground for the same. 2 Dill. Mun. Corp. (2d Ed.), § 598.

The proper exercise of discretion by the city is conclusive upon the courts. 2 Dill. Mun. Corp. (2d Ed.), § 600.

The next very important question arising from the pleading is, whether or not the property of complainants, which does not actually adjoin the grounds included in the park, is assessable under the provisions of the 27th section, article 19, of the constitution of the state, which reads as follows, to-wit: "Nothing in this constitution shall be so construed as to prohibit the general assembly from authorizing assessments on real property for local improvements in towns and cities under such regulations as may be prescribed by law, to be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected; but such assessments shall be *ad valorem* and uniform." It is evident that this section confers no new powers upon the legislature, but the first clause of it is simply a recognition of power already existing; that is, inherent under the grant of general municipal powers. Section 255, Tiedeman, Mun. Corp. The second and last clause contains restrictions which, of course, must be observed, notwithstanding the inherent powers under the general grant of municipal power. In the discussion of this provision of the constitution, the word "adjoining" is made the controlling word, in the endeavor to determine whether or not any real property in the district is assessable, except that which absolutely touches the park grounds. Such is the contention of the appellants. On the contrary, the appellees contend that all the property in the district is adjoining, in one sense, the locality to be affected, and is therefore assessable. The etymological meaning of "adjoining" is "touching or contiguous to;" and there does not seem to be any other meaning to the word, when used in this sense. But what effect, in the practical affairs of life, the close relationship or connection of associate words or attendant circumstances may have upon its meaning, to give it a different shade of meaning, we cannot say. It is sufficient for us to say, however, that the lexicographical meaning of the word "adjoining" is "close to," "near to," "contiguous" (see Worcester's Dictionary); that it is thus given the same meaning as "adjacent," which is more elastic than "adjoining," when used in its etymological sense.

In the case of *Vestal* v. *Little Rock,* 54 Ark. 325, in construing the word "contiguous" (which all must agree is, as nearly as may be, synonymous with "adjoining") in its employment to

define what land may or may not be annexed to a city or town, the court said: "To sustain their first ground for reversal, appellants rely on the fact that the city is on one side, and a part of the lands included in the order is on the other side, of the Arkansas river. But we do not think this fact conclusive that the lands are not contiguous within the meaning of the act. The river is included in the land annexed, and is therefore not a break in the contiguity, nor an insuperable barrier to a complete amalgamation of the communities upon its opposite bank,"—citing authorities. Again, in the case of *Little Rock* v. *Katzenstein,* 52 Ark.107, where, of a lot not at all touching the locality of the improvement itself, but separated from it by another assessable lot, this court said: "The action of the city council in including property in an improvement district is conclusive of the fact that it is adjoining the locality to be affected, except when attacked for fraud or demonstrable mistake." In the case at bar there is no break in the continuity of the assessable lots or parcels of ground from the park grounds to the outermost boundaries of the district, which is the city. Therefore, according to *Katzenstein* v. *Little Rock, supra,* all is adjoining the locality to be affected.

Again, it is undoubtedly true that, by the erecting of buildings, the planting and training of trees, the sowing and setting of grasses and flowers, and the like, upon the park grounds, the park itself is affected in a merely physical way, and in that sense the park may be the "locality to be affected." But that is not, perhaps, the effect spoken of in the law on the subject, in connection with the levying of assessments for local improvements on the property outside the park belonging to private individuals or corporations liable to such assessments under the law. It is the locality formed by the assessable property, in all probability, which is to be enhanced in value by the making of the improvement that constitutes the locality to be affected; and this, of course, is all the property in the district which is otherwise assessable for such purposes. Such is the property "affected," or may be, within the meaning of the constitution, because it is the property benefited, and that alone can justify the assessments.

Now, it is evident that, under the doctrine contended for by the appellants, no park could be built; for the revenue arising from an annual assessment for 20 years of 1 per cent. would be in all conceivable cases utterly inadequate to purchase the necessary

grounds and improve them into a park. The legislature, in authorizing the formation of improvement districts for the purpose of making public parks, doubtless took into consideration all the meanings that might be given to words and phrases used in the constitution, and, in order to make its action of practical use, and not utterly futile, probably ignored the theory contended for by the appellants, and acted upon some one of those referred to above, or some other that we may not have named. That being the case, and it being purely a legislative matter, the doubts that may arise as to the constitutionality of its action, under a familar rule, must be resolved in favor of the validity of the same. Neither is it clear how the city council, in conforming·its acts to the act of the legislature, could be guilty of proceeding without the authority of law, in view of the construction this court has put upon the constitution and the statutes. We conclude that the property of appellants was properly assessable, and that there is a lien on the same for the assessments.

There is another question raised by the appellants which we will consider. And that is, whether or not their property was benefited by the contemplated improvement. This contention doubtless has for its origin the decision of the supreme court of the United States in the recent case of *Norwood* v. *Baker,* 172 U. S. 269. That was a peculiar case, indeed,—involving a mixture of questions arising both from an exercise of the right of eminent domain, and the law imposing local assessments for the purpose of not only paying the expenses of street improvement but for paying for the ground condemned for a street. The condemned property and all the property assessed was the property of a woman. She was thus made to pay not only for the improvement of the street, but to pay herself for the street itself. The case was reversed, of course; but, in assigning grounds for the reversal, many things were said that gave rise to the greatest confusion. It was not long, of course, before the soundness of the opinion in that case began to be called in question, and the opinion sharply criticised, not only in the state courts, but also in the federal courts; and a half dozen or more of these cases have since been appealed to the supreme court of the United States, and the decision of *Norwood* v. *Baker, supra,* has been so weakened that it is really of little practical force, as the law now stands, except in so far as it may be determined therefrom that in the enactment of state

laws it must appear somehow, it matters little how, that the benefits to accrue to the property owner must be considered. This leaves the method of our constitution—the assessment according to value and uniform—intact.

Now, it goes without further question that the inclusion of a piece of real property in an improvement district by city ordinance is at least *prima facie* proof that it will be benefited by the proposed improvement; and, there being no attempt to show to the contrary in this case, the finding must be that the property is assessable. In fact, it is manifest, from the universal opinion in favor of the proposition that such property is always benefited by such improvement, that the attempt to show to the contrary would be useless in all instances; for all men concur that such things add to the health, comfort, pleasure and convenience of a town or city, and the inhabitants thereof.

We need not repeat here, what has been so often recently said by this court, that the whole area of a city may be included in one improvement district; nor need we say that such is the plain meaning of the language of the legislative enactment from which we have quoted. The organization of districts is left to the sound discretion of the city or town council in every instance.

This, of course, affirms the decree in this cause, and makes it unnecessary, in the determination of this appeal, to say that, in our opinion, when it is found that one has joined in the petition of ten asking the organization of the district, or has become one of the majority in petitioning for the assessment to be made, that one is estopped from calling in question the organization of the district or the validity of the assessments. As to whether one who has paid voluntarily one or more of the assessments is thereby precluded from resisting the payment of the others, we do not say. As covering the whole ground, we adopt the decision of the special chancellor as our own, in addition to what we have said.

The decree is affirmed.

BATTLE, J., dissents.

RIDDICK, J., (dissenting.) If the decision of this case depended on my personal feeling in the matter, I should favor the appellee, for I consider the park to be an ornament to the city, and should like to see it improved. But a consideration of the case has convinced me that the assessment levied against the lots of

the appellant should not be sustained, for the reason that the lots neither adjoin nor are adjacent to the park which it is proposed to improve.

A provision of our state constitution specially authorizes assessments on real property for local improvements in towns and cities, but provides that such assessments shall be based upon the consent of a majority in value of the property holders owning property adjoining the locality affected. Const. 1874, art. 19, § 27.

In considering the meaning of this section, the first question I shall notice is what is meant by the phrase "the locality affected," for it is only land adjoining "the locality affected" that the constitution permits to be assessed for the improvement. In other words, it is not the "locality affected," but the property adjoining the "locality affected" which is to be taxed for the improvement. For this reason, it seems to me very plain that the phrase "locality affected," as used in the constitution, does not mean the locality or land benefited in value only by the improvement, for, if it did, it would include the whole improvement district. As the land upon which the assessment is to be levied is that adjoining the "locality affected," then, if "the locality affected" includes the whole district, it would follow that the constitution would authorize the assessments to be levied, not only upon the lands of the improvement district, but also upon the lands adjoining the district, which would be upon the lands outside the district. This would be absurd, and would lead to a result that we know was not intended. The locality affected means, then, I think, not the lands benefited in value by the improvement, but that which is physically affected by the improvement, such as the street or the park which is improved, and it is the land which adjoins this improvement that the constitution permits to be assessed.

Now, the city is laid off into blocks 300 feet square, and the lots of appellants upon which the assessment is imposed are from a quarter of a mile to three miles distant from the park. If these lots adjoin the park, then the whole city adjoins the park. And this is the conclusion at which the majority of the judges have arrived. In their opinion, they say, as a reason for this conclusion, that "there is no break in the continuity of the assessable lots or parcels of ground from the park to the outmost boundaries of the district, which is the city." But by the same line of reasoning it

can be shown that the whole county adjoins the park, for there is no break "in the continuity of the ground." The same thing may be said of the state, and, as the whole world itself is but a compact ball of which the park is a part, it may all, under this line of reasoning, be shown to adjoin the park.

Evidently, this is not the correct construction of the section of the constitution referred to. We should presume that words in the constitution have been used in their natural and ordinary meaning. Cooley, Const. Lim. (6th Ed.), 73. The usual and ordinary meaning of the word "adjoining" is contiguous, or in contact with. Cent. Dict.; Webster's Dict. This is also the meaning that the courts have generally given to it when found in the law. *In re Ward,* 52 N. Y. 395; *Johnson* v. *District of Columbia,* 6 Mackey (D. C.), 21; *Akers* v. *United N. J., etc., R. Co.,* 43 N. J. L. 110; *Miller* v. *Mann,* 55 Vt. 475; And. Law Dict.

This, it seems to me, is the meaning of the word as found in our constitution, though in the case of *Little Rock* v. *Katzenstein,* 52 Ark. 107, this court, in a street improvement case, held that all the lots of each quarter of a block adjoined both of the streets upon which the quarter abutted, notwithstanding that it was divided into lots, so that some of them were not contiguous to both streets. In other words, the court held that the whole of the quarter of the block adjoined the streets upon which it abutted, and that the question of whether the property in the quarter block adjoined a street was not controlled by the way in which it was subdivided into lots.

Under this decision, it might perhaps be held that all the lots in the blocks surrounding and contiguous to the park were adjoining it, within the meaning of the constitution, but it seems to me to furnish no authority whatever for holding that lots separated from the park by nearly the whole city and by the Arkansas river are still adjoining the park.

But it is said that, if only the blocks adjoining the park can be assessed, the park could not be improved. To this we can say that the park could be improved by the use of the general funds of the city, or it could be improved in part by such funds and in part by an assessment upon the surrounding blocks to the extent that these blocks are specially benefited by the improvement. If the tax which the law allows the city to levy is not enough for that purpose, the law should be changed. The argument on this point

may show that the law is defective, and needs revision, but it furnishes no reason why the courts should make the change in the law by putting a new and altogether novel meaning upon the words used in the constitution.

The contention that the action of the city council in including the whole city in the district to be assessed for the improvement of the park is conclusive of the question that the lots of appellants adjoin the park can hardly be treated as seriously made. It is true that discretionary powers of a city council are not subject to judicial control, but under our constitution it is not within the discretionary powers of a city council to assess lots for an improvement where the block in which the improvement is situated does not adjoin the locality improved. In the absence of a showing to the contrary, the court would presume that the council did not overstep the law, but, when it is clearly shown that it did undertake to do so, the courts would be compelled to hold that the constitution was superior and paramount to the city ordinance; otherwise, the constitution could be overturned by the action of a city council, and, so far as affording protection to property rights, would be worthless. There is neither reason nor authority for such a contention. *Norwood* v. *Baker,* 172 U. S. 269.

Another point argued is that some of these appellants joined in the petition to the council for the formation of the improvement district, and are thereby estopped to question the validity of the ordinance the passage of which they procured. As there are others of the appellants who did not join in the petition, and as the decision of the majority of the judges is not based on this ground, I have not given much consideration to this point, for it affects only those who signed the petition. But I will say that, as to those who signed the petition to the council for the formation of the district, it might well be held that they could not at this time question the fact that their land was properly included in the district; the district having been formed and the land included at their request. After the improvement has been made as requested by them, it would seem to be too late for them to question the validity of the ordinance on that ground, and I am of the opinion that they are estopped from doing so. *Burlington* v. *Gilbert,* 31 Ia. 356.

But, as before stated, this does not affect the rights of those who did not sign the petition. As to them, it seems to me that it

is clearly shown that their property does not adjoin, or even lie adjacent to the park, and that therefore the attempt to levy a special assessment upon it for the improvement of the park is contrary to the constitution and invalid. For this reason, I think that the decision of the chancellor sustaining the assessment is, as to those who did not sign, wrong, and should be reversed.