### FORT SMITH *v.* WILSON.

Opinion delivered November 6, 1911.

MUNICIPAL CORPORATIONS—POWER TO PURCHASE LAND FOR CEMETERY.—
Under Kirby's Digest, sec. 5449, providing that cities "shall have the power to regulate the burial of the dead, to provide without the corporate limits of the corporation places for the interment of the dead, and to prevent any such interment within any such limits, except in public burying grounds established before the adoption of this act," and sec. 5436, *Id.*, authorizing cities to acquire real property, a city is authorized to acquire land within the city limits for a public cemetery.

Appeal from Sebastian Chancery Court; *J. V. Bourland,* Chancellor; reversed.

*Vincent M. Miles,* for appellant.

A city of the first class has power to purchase a cemetery within its limits. Kirby's Dig., § § 5449, 5436-7-8; 58 Cal. 63; 71 S. W. 943; Dillon, Mun. Corp. (4 ed.) § 565.

*Hill, Brizzolara & Fitzhugh,* for appellee.

A city of the first class has no power conferred upon it by law to purchase land for a cemetery *within* its corporate limits. Kirby's Digest, § 5449; 105 Cal. 151; 68 N. Y. 167-171; 3 Dillon, Mun. Corp. (5 ed.) § § 1975, 1557; 71 Ark. 4-8; 45 Ark. 524-527; 28 Fed. Cas. 185-193; etc.

KIRBY, J. Appellee filed a bill in equity to enjoin the appellants from the purchase of ten acres of ground within the limits of the city of Fort Smith, a city of the first class, adjoining its present cemetery, for the purpose of an addition to the said cemetery, claiming that the city was without power to make said purchase. This is the only question to be decided, and both parties rely for support of their contention upon a construction of section 5449 of Kirby's Digest, which provides: "They shall have the power to regulate the burial of the dead; to provide without the corporate limits of the corporation places for the interment of the dead, and to prevent any such interment within any such limits, except in public burying grounds established before the adoption of this act. They may not only impose proper fines and penalties, but shall also have power to cause any body, interred contrary to such prohibition, to be taken up and buried without the limits of the corporation."

It is also necessary to consider in connection with this

section 5436 of the Digest, which provides: "Cities or incorporated towns, organized or to be organized under the provisions of this act, shall be and are hereby declared to be bodies politic and corporate, under the name and style of 'the city of..........,' or 'the incorporated town of..........,' as the case may be; capable to sue and be sued, to contract and be contracted with, to acquire, hold and possess property, real and personal; to have a common seal, and to change and alter the same at pleasure, and to exercise such other powers, and to have such other privileges as are incident to other corporations of like character or degree, not inconsistent with the provisions of this act, or the general laws of the State."

Under this last section, all cities and towns within the State are declared to be bodies politic and corporate and, expressly impowered, "to *acquire, hold* and *possess* property, real and personal, * * * and to exercise such other powers and to have such other privileges as are incident to other corporations of like character or degree, not inconsistent with the provisions of the act, or the general laws of the State."

In *Searcy* v. *Yarnell*, 47 Ark. 269, this court said: "A municipal corporation may be the owner of two classes of property. One class includes all property essential to, or even convenient for, the proper exercise of municipal functions and corporate powers. The other class includes all property held for general convenience, pleasure or profit."

It will not be questioned that said city of Fort Smith had the power under our laws to acquire and hold property for a cemetery within its limits, unless, as contended, said section 5449 was a limitation upon such power and a prohibition of its use, except in acquiring property beyond the confines of the city for such purpose.

It has been generally held that cities and towns may acquire and hold lands for public parks and places of recreation and amusement for their inhabitants out of necessity for the protection of the public welfare.

In *Matthews* v. *Kimball*, 70 Ark. 451, this court held: That it was within the power of a city of the first class to organize the whole city into an improvement district and tax the lands therein for the purpose of acquiring lands for the establishment and maintenance of a public park; and quoted

from *Crane* v. *Siloam Springs*, 63 Ark. 36, the following; "Provisions for local conveniences like water, light, public parks for recreation, and other public accomodations of the same kind, are some of the matters which are furnished or provided for by municipal corporations in their *quasi*-private capacity, in which they act, not as an agency of the State, but exclusively for the benefit of their own inhabitants. It is in respect to such matters of local concern that the largest freedom of action has been allowed municipal corporations."

And it is certainly no less important or necessary that they should have such power to provide cemeteries for the burial of their dead. The disposition of the dead is equally, if not more, necessary, to the welfare of the living, than the establishment of parks, playgrounds and places for their recreation and amusement. The dead must be buried, and our Constitution recognizes the necessity for it and exempts from taxation all cemeteries.

This statute gave the power to regulate the burial of the dead within, and to purchase lands beyond, the limits of the city for their interment and to prevent interment within the city limits except in public burying grounds established before its adoption, with the power to cause any body buried contrary to its prohibition to be disinterred and buried without the limits of the corporations, leaving it within the discretion of the governing bodies of said cities to exercise said power when the public convenience and welfare demanded that it should be done. It is not a limitation, but an enlargement of the powers of said cities, and is entitled to a liberal construction in furtherance of the beneficial objects which it was intended to promote. Any other construction would defeat the intention of the act.

It follows that the court erred in its construction of said section, and its judgment is reversed, and the cause dismissed.