## KERKER *et al.* v. BOCHER *et al.*

No. 1938, Okla. T.    Opinion Filed April 13, 1908.

(95 Pac. 981.)

1.    MUNICIPAL CORPORATIONS—Street Improvements—Assessments—Ordinance Unnecessary, When. Where the city council shall deem it necessary to pave any street, or any part thereof, within the limits of a city, for which a special tax is to be levied and such council, by resolution duly passed, declares such improvement necessary, and causes the publication of same for four consecutive weeks in a proper newspaper, the owners of a majority of the lots or parts of lots liable to taxation therefor failing within 20 days thereafter to file with the clerk of said city protest against such improvements, and proceeds to cause such improvements to be done, without the adoption of an ordinance to that end, but by adopting plans and specifications, including an estimate of the cost of such improvement, and authorizing the clerk to advertise for bids therefor, the contract being accordingly let under competitive bidding, and afterwards by ordinance appraisers being appointed, and their report, after some amendments by the council, being adopted by ordinance, the abutting property owners, under such circumstances, can be estopped from questioning the validity of such assessment.

2.    SAME—Objections of Property Owners—Waiver. Abutting property owners, with knowledge that such paving is being done with the intention of levying a special tax upon them for pay-

ment of the same and permitting such improvement to be done without objection to the council, and knowingly receiving the benefits, when afterwards they seek relief in equity to escape payment therefor, will be deemed to have ratified the same, and estopped from setting up any irregularity, except when it goes to the extent of jurisdiction.

3. SAME—Review of Assessment—Equity. When the estimate of benefits is referred to a board of appraisers, and afterward approved by the council, the remedy of one who considers himself unfairly assessed is to apply for redress to such tribunal. and, tailing so to do, he will not be permitted in an action in equity to overcome such finding, especially on review in the Supreme Court, when the referee found that there was no proof to show that appraisement or assessment was in any way inequitable or unjust.

(Syllabus by the Court.)

*Error from District Court, Pottawatomie County; before B. F. Burwell, Judge.*

Action by J. F. Kerker and others against C. J. Bocher and others. Injunction to prevent collection of assessments for street improvements. Judgment for defendants, and plaintiffs bring error. Affirmed.

On the 6th day of September, 1904, this action was begun in the district court of Pottawatomie county, Oklahoma Territory, seeking a temporary restraining order against the defendants, as mayor and city council of the city of Shawnee, to enjoin them to issue certificates or tax warrants against the several property of the plaintiffs in error, or any or either of them, abutting on Park street, until the further order of said court, and, further, to restrain the defendants C. J. Bocher and C. J. Becker, respectively as mayor and city clerk of said city, from attaching their official signatures and affixing the corporate seal of said city to such certificates or tax warrants in favor of W. M. Davis or his assigns against any property of said plaintiffs in error, and from delivering said certificates to said Davis, his assigns, and others, until a further order of said court. Said petition was supported by accompanying affidavits, and upon presentation to the county judge

of Pottawatomie county the temporary injunction prayed for was granted, to become effective on the plaintiffs filing with the clerk of the district court a bond under the conditions as required by law in the sum of $1,000, to be approved by the clerk, which bond was duly executed, filed, and approved. Afterwards, on the 14th day of July, 1905, plaintiffs filed their amended petition, praying as follows:

"That a temporary restraining order be issued to the defendants, as mayor and city council of the city of Shawnee, enjoining them from issuing certificates or tax warrants against the several property of these plaintiffs, or any or either of them, abutting on said Park street, until the further order of this court, and that the defendants C. J. Bocher and C. J. Becker, as mayor and city clerk of the city of Shawnee, be enjoined and restrained therein from attaching their official signatures and attaching the corporate seal of the city of Shawnee to certificates or tax warrants, in favor of said W. M. Davis or his assigns, against the property of these plaintiffs, and from delivering said certificates or tax warrants to said W. M. Davis, or his assigns, or at all, till the further order of this court. That the defendants, as mayor and city council of the city of Shawnee, be enjoined and restrained from levying a special tax or assessment against the property of these plaintiffs, or any of them, to pay said certificates or tax warrants issued or sought to be issued, and that the defendant C. J. Becker, as city clerk of the city of Shawnee, be enjoined and restrained from certifying any tax levy of a special tax or assessment made and levied to pay said certificates or tax warrants issued against the property of these plaintiffs, or any of them, abutting on Park street, until the further order of this court. That the defendants, as mayor and city council of the city of Shawnee, be enjoined and restrained from levying a special tax or assessment against the property of these plaintiffs, or any of them, to pay said certificates or tax warrants issued or sought to be issued, and that the defendant C. J. Becker, as city clerk of the city of Shawnee, be enjoined and restrained from certifying any tax levy of a special tax or assessment made and levied to pay said certificates or tax warrants issued against the property of these plaintiffs, or any of them, abutting on Park street, until the further order of this court. That the defendants, as mayor and city council of the city of Shawnee, and C. J. Becker as city clerk of said city, be per-

petually enjoined from signing, sealing, issuing, or delivering said certificates or tax warrants against the said property of these plaintiffs, or either of them, to said W. M. Davis, or his assigns, or at all. That the defendants, as mayor and city council of the city of Shawnee, be perpetually enjoined from levying a special tax or assessment against the said property of these plaintiffs, or any of them, to pay off and discharge the said certificates, or any part or installment thereof, and that the defendant C. J Becker, as city clerk of said city, be perpetually enjoined from certifying any such levy to the county clerk of Pottawatomie county."

On the 27th day of July, 1905, defendants served upon the the plaintiffs their answer to the amended petition and notices of motion to dissolve said temporary injunction; said answer having been duly filed by leave of court. Afterwards plaintiffs were permitted, by way of amendment, to add an additional paragraph to the first amended answer, said paragraph being in words and figures as follows:

"Plaintiffs and each of them are ready and willing to pay all special assessments that are now or may hereafter become a legal charge against their property, or the property of any of them, to the full extent of the benefits resulting to their property, or the property of any of them, from such improvement, when the same shall have been ascertained by the courts, or under its direction, and now here in court offer to pay the same."

On the 15th day of September, 1905, by agreement, said cause was referred to J. H. Everest, Esq., to try and determine the issues of law and fact and report thereon to the court. Afterwards, on the 29th day of March, 1906, the said referee made his findings of fact and conclusions of law in words and figures as follows:

"That on September 7, 1903, defendants passed a resolution declaring it necessary to grade Park street, from north side of Main street to the north line of Dill street, as follows:

" 'Resolution to Grade Certain Streets and Avenues.

" 'Be it resolved by the mayor and councilmen of the city of Shawnee: First, that it is necessary to grade and improve certain following described streets and avenues of the city of Shawnee, to wit: Market street, from the north side of Main street to the south side of Dill street; Park street, from the north side of

Main street to the north line of Dill's addition to the city of Shawnee; Louisa street, from the north line of Main street to the north side of Dill's addition to the city; Ninth street, from Broadway to Kickapoo street; Highland avenue, from Broadway to Kickapoo street; Tenth street, from Broadway street to Kickapoo street; Ridgewood avenue, from Broadway to Kickapoo street; Dewey avenue, from Market street to Kickapoo street; Wallace avenue, from Market street to Kickapoo street; South Broad street, from south line of Choctaw, Oklahoma & Gulf Company's right of way to Bluff street; Dill street, from Kickapoo to Broadway. That if the owners of a majority of the lots or parcels of land liable to taxation for the above improvements shall not, within twenty (20) days after the completion of the publication of this resolution, file with the city clerk of said city their protest—if made against each street and avenue to be improved, must be separate—which shall be considered only against the street or avenue protested against, then the council of such city shall cause such improvements to be made, and contract therefor at the expense of the abutting lots, pieces, or parcels of ground, as provided in section 3, art. 2, c. 8, of 1901 Session Laws of Oklahoma Territory, and will issue certificates against such lots, pieces, or parcels of ground for the amount as provided by law.

" 'Adopted and approved this 2d day of September, 1903.

" 'C. J. Bocher, Mayor.

" 'C. J. Becker, City Clerk.'

"That said resolution was published in the official paper four consecutive weeks. That the mayor and council of the city of Shawnee have never passed, approved, and ordained an order, resolution, or ordinance providing for, and authorizing and directing the grading and improvement of Park street, or any part thereof, other than as stated as finding 1. That on January 6, 1904, the mayor and council adopted plans and specifications grading Park street, which plans and specifications included an estimate of the cost of such improvement. That on April 19, 1904, the clerk was authorized to advertise for bids grading Park street. That on May 5, 1904, notice for bids for grading was given and published ten (10) days. On May 17, 1904, the following bid of W. M. Davis was accepted by the mayor and council:

" ' To the Honorable Mayor and Council of the City of Shawnee——Gentlemen: I herewith submit to you my bid as follows

on the hereafter named streets: I agree to grade the said streets according to the plans and specifications of the engineer for the sum of 35 cents per cubic yard, to be paid for in tax warrants issued by the city council against the abutting lots as provided by law, city in no case to be liable for the payment of same, and further agree that in case any of the owners of the abutting property or any piece or parcel liable to taxation for any of such work, may redeem the tax warrants at a cash discount of 40 per cent. on the same, at the completion of grading. This bid contemplates that there shall be a free haul and free fill, as specified by the city engineer. This bid applies to the following named streets, to wit: Park street, from Main to Kirk street, at 37 cents; Ridgewood street, from Kickapoo street to Broadway street; Hobson street, from Dexter street to Burns street; Beard street, from Dewey to Burns street; Dewey street from Kickapoo street to Union avenue. I herewith hand you certified check for $200 to comply with bid.

"  'Respectfully,          W. M. DAVIS.'

"Council Proceedings.

"  'May 17, 1904.

"  'Council met in regular session. Mayor Bocher presided. Bids on street grading were opened and read. Bidders are as follows: W. M. Davis, Park street, from Main street to Kirk street, at 37 cents per cubic yard, with a 40 per cent. discount for cash. On motion by Reiley, seconded by Reid, that we award the contract to Mr. Davis, and that the city attorney be instructed to draw up a contract and bond, and the mayor and clerk be authorized to execute the same according to the plans and specifications. Carried. Motion by Pemberton, seconded by Harrison that we reconsider the motion awarding the contract of street grading to Mr. Davis. Upon roll call the vote stands as follows: Harrison, Reid, Cade, Blakely, Farrall, Baumle, Keller, Timmons, and Pemberton, aye; Crisman, Jacobs, and Reiley, nay. Motion by Pemberton, seconded by Cade, that we accept Mr. Cline's bid on street grading at 40 per cent. discount for cash, and that the contract be awarded him. Substitute by Reiley, seconded by Jacobs, that we accept Mr. Davis' bid. Upon roll call the vote stands as follows: Reid, Cade, Farral, Crisman, Baumle, Keller, Timmons, Jacobs, and Reiley, aye; Blakely and Pemberton, nay; Harrison passed. Motion by Reiley, seconded by Keller, that we award contract of street grading to Mr. Davis, and that the mayor and clerk be

authorized to execute the contract and be required to give a $2,000 bond. Carried.

" 'C. J. Bocher, Mayor.

" 'Attest:   C. J. Becker, City Clerk.'

"Minute Record No. 2, page 478, 479.

"That on June 9, 1904, the mayor and clerk executed the following contract with W. M. Davis:

" 'Contract for Street Grading.

" 'Know all men by these presents, that this agreement, made and entered into this 9th day of June, 1904, by and between the city of Shawnee, Pottawatomie county, Oklahoma Territory, party of the first part, and W. M. Davis, party of the second part, witnesseth, that whereas, the city of Shawnee did, by its mayor and councilmen, pass and adopt a resolution deeming and declaring it to be necessary to grade and thereby improve Park street, from Main street to Kirk street, all of the same being within the limits of said city of Shawnee, and did duly advertise for bids for said grading on each of said streets separately, all of which was done under article 2 of chapter 8 of the Session Laws of 1901 of the territory of Oklahoma, and has accepted the bid of W. M. Davis, party of the second part, for said grading on each street separately at the sum of thirty-five cents per cubic yard, for all dirt and earth taken and removed from the cuts in said grading, with free haul for the same to the places where needed or disposed of in said grading, and with free fill for said grading, and provided that the owner of any lot or parcel of ground abutting on any of said grading shall be entitled to a discount from the contract price of forty percent. thereof for the payment of cash therefor at any time before the certificates for said grading are issued and delivered to the contractor: Now, therefore, said party of the second part hereby agrees that he will perform said work and do said grading according to the profiles, plans, and specifications made by the city engineer and adopted by said city council and on file in the office of the city clerk of said city, and do the same at the prices named above in this contract, and that he will complete all of said grading on or before the 9th day of December, 1904, and that he will allow any lot owners a discount of forty per cent. from the contract price for the payment in cash at any time before the certificates for said grading are issued to said party of the second part.   The said party of the first part agrees that it will proceed according to said statute to cause the benefits of said

grading to be appraised as provided by law, and to review such appraisement and to assess the benefits of such grading by an ordinance against the lots and parcels of ground, as provided by law, and will issue certificates of such assessment as provided by statute, and deliver the same to the said party of the second part in a sum total amounting to the contract price, less cash payments, for said grading and improvements as before set forth, in full payment for said grading; the city of Shawnee assuming no liability therefor.  The said party of the second part shall execute a bond forthwith to the city of Shawnee in the sum of two thousand dollars, with good and sufficient sureties, conditioned for the faithful performance and fulfillment of this contract according to its terms and tenor, and to hold said city harmless against all claims for damages by reason of negligence of the party of the second part in doing said work and grading, and against all claims of any subcontractors or laborers performing any part of such work or grading.

" 'In testimony whereof, the said parties have hereunto subscribed their names the day and year first above written.

" 'CITY OF SHAWNEE,

" 'By C. J. BOCHER, Mayor

" 'Party of the First Part.

" 'Attest:   C. J. BECKER, City Clerk.'

"Executed in duplicate.

"That no separate estimate of the cost of grading Park street was prepared, filed, and presented to the council prior to advertising for bids and letting the contract for the grading of said street, but said estimate was included in the plans and specifications shown at finding No. 4.   That on June 21, 1904, the mayor and council took the following action adopting Ordinance 384, appointing appraisers to appraise the benefits to the property abutting on Park street, to wit:

"Council Proceedings.

" 'June 21, 1904.

" 'Council met in regular session, Mayor Bocher presiding. Councilmen present at roll call were Harrison, Reid, Blakely, Farrall, Crisman, Baumle, Keller, Jacobs, Timmons, and Pemberton. Cade and Reiley absent.   Minutes of the previous meeting read and approved as corrected.   Ordinance 384, an ordinance appointing appraisers on Park street, was read.   Motion by Crisman, seconded by Keller, that the words 'ten insertions be stricken out,

and insert 'two issues' in the weekly. Carried. Committee appointed Joe Farris, J. S. McIntyre, and J. Atterbury. Ordinance as amended was read and considered by sections, and as a whole council moved its adoption, all councilmen voting aye."

"That Ordinance 384 is as follows:

" 'Ordinance No. 384.

" 'An ordinance appointing three disinterested appraisers to appraise the benefits to all abutting property resulting from the grading and otherwise improving Park street from Main street to Kirk street, Ridgewood street from Kickapoo street to Broadway street, Hobson street from Dexter street to Burns street, Dewey street from Kickapoo street to Union avenue, Bell street from Ninth street to Woodland Park, and specifying the time and place for said appraisers to meet and begin said assessment.

" 'Be it ordained by the mayor and councilmen of the city of Shawnee, Oklahoma Territory:

" 'Section 1. That for the purpose of appraising the benefits to all of the abutting property resulting from the grading and otherwise improving Park street from Main street to Kirk street, Ridgewood street from Kickapoo street to Broadway street, Hobson street from Dexter street to Burns street, Dewey street from Kickapoo street to Union avenue, Wallace street from Kickapoo street to Union avenue, Bell street from Ninth street to Woodland Park, there be and there is hereby appointed the following named disinterested appraisers, who are freeholders of the city of Shawnee, on the 14th day of July, 1904, at the hour of nine o'clock a. m., and after taking the oath to fairly and impartially perform their duties and appraise the benefits to all the abutting property resulting from said grading and improving said streets, they shall proceed from thence to view and appraise the benefits to each lot and parcel of ground as provided in section 2 of chapter 8 of the Session Laws of 1901 of the territory of Oklahoma. The engineer of said city shall accompany them, and furnish them with all contracts, estimates, and apportionments of costs necessary to enable them to intelligently discharge their duties, and the said appraisers shall embody their appraisements in a written report, with the lots and subdivisions in each one-fourth block separately stated in such report, and file the same with the city clerk of said city.

" 'Sec. 2. The said appraisers may adjourn from day to day until their labors are completed, and shall give any property

owner a hearing with respect to his assessment, he so desiring to be heard.

" 'Sec. 3.   Said appraisement and assessment shall be for the cost of making the improvement and doing the grading on said streets according to the contract, which shall include all other expenses incurred by the city of Shawnee in addition to the contract price of the work.

" 'Sec. 4.   This ordinance shall be published for at least two weeks in the Shawnee Weekly Quill, a newspaper published in said city, and the city marshal of said city shall also post at the corner of each one-fourth block affected, in some conspicuous place, a printed copy of this ordinance at least twenty days in advance of the aforsaid meeting of said appraisers, and shall file an affidavit with the clerk of said city of having posted such copies of this ordinance, giving the date of such meeting.

" 'Sec. 5.   That this ordinance shall take effect and be in full force from and after its passage, approval, and publication as required by law.

" 'Passed by the council the 21st day of June, A. D. 1904, and approved by the mayor the 22d day of June, A. D. 1904.

" 'C. J. BOCHER, Mayor.

" 'Attest:   C. J. BECKER, City Clerk.'

"That Ordinance 384 was published and posted as required by law.   That on July 18, 1904, the board of appraisers made and filed their report of their proceedings as such appraisers as follows:

" 'Shawnee, Oklahoma, July 26, 1904.

" 'To the Honorable Mayor and City Council of the City of Shawnee, Pottawatomie County, Oklahoma Territory:

" 'We, the undersigned, board of appraisers, who were on the 21st day of June, 1904, duly appointed by said mayor and city council to assess the benefits to each lot, piece, and parcel of ground in each quarter block abutting on that part of Park street and Bell street which have been recently graded by the contractor therefor under and by virtue of the contract with said city, do hereby submit this our written report embodying our appraisement of the benefits to said parts or parcels of ground in each quarter block abutting on said part of said streets.   Our said appraisement, showing the amounts separately assessed by us upon said lots and parcels of ground, is attached hereto and made a part of this report, and immediately follows our signature hereto, and is marked "Exhibit A."   We were accompained by said city

angineer in the said view and appraisement, and were by said engineer furnished with all contracts, estimates, and apportionments of costs necessary to enable us to intelligently discharge our duties as appraiers. We met at the said city council chamber of said city on the 18th day of July, 1904, at 9 of clock a. m. of said day, and severally took the oath required by section 6, chapter 3, of the Laws of Oklahoma Territory of 1901, and organized our said board by the election of said J. S. McIntyre, chairman, and J. W. Atterbury, secretary of said board, and thereupon on said day entered upon the performance of our duties. We therefore continued our labors as such board from day to day and until the 26th day of July, 1904, at which last-named day we completed our work as such board of appraisers and filed this our report with the city clerk of said city.

"'J. S. McIntyre, Chairman.
"'J. W. Atterbury, Secretary,
"'Joe Farris,            Appraisers,'

"'Notice is hereby given that the city council of the city of Shawnee will meet on the 30th day of August, 1904, at 8 o'clock p. m., in the council chamber of said city council in said city, for the purpose of reviewing the report of the board of appraisers making assessments on the various lots, pieces, and parcels of ground charged with the cost of grading Park street from Main street to Kirk street and Bell street from Ninth street to Woodland Park in said city. The report of said appraisers is hereto attached and published herewith. At said meeting the mayor and council will hear and adjust any complaints and review the assessments made by said board of appraisers, as provided by law, and will review and correct, raise and lower, or readjust or reapportion, said assessment as provided by law, and said council will adjourn from day to day and from time to time until its labors are completed. At said meeting all parties in interest may appear and be heard.

"'C. J. Becker, City Clerk.'

"That said report was published in the official paper August 12, 1904, together with a notice that the council would meet August 30, 1904, to review such report. That on September 1, 1904, the mayor and council took the following action in reviewing the action of the appraisers on Park street:

"Council Proceedings.

"'September 1, 1904.

"'Council met in adjourned session, Mayor Bocher presiding.

Councilmen present at roll call were Reid, Cade, Blakely, Farrall, Crisman, Keller, Timmons, and Jacobs. Harrison, Baumle Pemberton, and Reiley, absent.    That Ordinance No. 396, so far as same relates to Park street, is as follows:  Ordinance No. 396, an ordinance revising, readjusting, and reapportioning the appraisement on the lots, pieces, and parcels of ground abutting on Park street and Bell street, was read and considered by sections.    Upon hearing all complaints, the councilmen moved its adoption, all councilmen voting aye.

" ' "Ordinance No. 396.

" ' "An ordinance revising, readjusting, and reappointing the appraisement and assessment against lots in each quarter block abutting on Park street from Main street to Kirk street for the grading of said part of said street and other expenses incurred thereby, and levying taxes for the same on the lots benefited thereby in each quarter block abutting thereon.

" ' "Be it ordained by the mayor and councilmen of the city of Shawnee:

" ' "Section 1.    That whereas, the board of appraisers heretofore appointed by an ordinance of said city to make the appraisement and assessment against the lots and parcels of ground in each quarter block abutting on that part of Park street from Main street to Kirk street, * * * in the city of Shawnee, have made their appraisement and filed their report for the grading and part of said street and other expenses connected therewith, which said reports, appraisements and assessments have been published as required by law, and the 30th day of August, 1904, having been fixed and designated by notice duly published as required by law for the mayor and councilmen of said city to hear and adjust any complaint as to such assessment and appraisement, and to revise and readjust the same, and such hearing having been adjusted to this 1st day of September, 1904.

" ' "Now, therefore, be it further ordained by the mayor and councilmen of the city of Shawnee:

" ' "Sec. 2.    That the aforesaid appraisement and assessment, on complaint made by certain owners of lots affected thereby, be and the same is hereby revised, readjusted, and reapportioned so as to make the assessment of benefits to each of said lots and parcels of ground of the expenses of said grading of said part of said streets as follows, as respectively set opposite to said lots, the

amount to be levied and assessed against same for that purpose, to wit, in the city of Shawnee as shown by the original town plat.

Park Street from Main to Kirk Street.
Original Town Plat.

| | | | | |
|---|---|---|---|---|
| Block 21, lot 1 | | | | $19.94 |
| " | " | " | 2 | 19.94 |
| " | " | " | 3 | 19.94 |
| " | " | " | 4 | 19.94 |
| " | " | " | 5 | 19.94 |
| " | " | " | 6 | 19.94 |
| " | " | " | 7 | 19.94 |
| " | " | " | 8 | 19.94 |

Cost of improving Park Street from Main Street to Kirk Street.

| | |
|---|---|
| 27,719 cu. yd. excavating at 37c free haul and free fill | $10,256.03 |
| 1,149 cu. yd. street railroad | 536.13 |
| Engineering, map, profile, and stake | 50.00 |
| Appraising | 45.00 |
| Printing | 45.00 |
| Typewriting | 3.00 |
| Total | $10,926.16 |

Appraisement of Park Street.
Original Town Plat.

| | | | | |
|---|---|---|---|---|
| Block 21, lots 1, 2, 3, 4, 5, 6, 7, 8, each | | | | $ 19.94 |
| Block 21, lot 10 | | | | 30.64 |
| " | " | " | 11 | 25.57 |
| " | " | " | 12 | 20.51 |
| " | " | " | 13 | 15.63 |
| " | " | " | 14 | 19.36 |
| " | " | " | 9 | 31.00 |
| Total | | | | $308.13 |

" " "[Balance of detailed statement omitted.]"

" 'Notice is hereby given that the city council of the city of Shawnee will meet on the 30th day of August, 1904, at 8 o'clock p. m., in the council chamber of said city council in said city, for the purpose of reviewing the report of the board of appraisers making assessments on the various lots, pieces, and parcels of ground charged with the cost of grading Park street from Main, street to Kirk street to Woodland Park in said city. The report of said board of appraisers is hereto attached and published herewith. At said meeting the mayor and council will hear and adjust any complaint and review the assessment made by said board of appraisers.

Kerker *et al.* v. Bocher *et al.*

| | | | | |
|---|---|---|---|---:|
| Block | 21, | lot | 9 | $ 31.90 |
| " | " | " | 10 | 30.64 |
| " | " | " | 11 | 25.57 |
| " | " | " | 12 | 220.51 |
| " | " | " | 13 | 15.63 |
| " | " | " | 14 | 19.36 |

" '[Balance omitted.]'

"That in taking a vote of the council on the passage of said Ordinance No. 384 appointing appraisers to appraise the benefits to the abutting property on Park street, the yeas and nays were not entered in the journal of the proceedings of the council, but said vote was taken by yeas and nays and entered in a record kept in connection with the journal for said purpose. That plaintiffs respectively own the property alleged in the petition. That the board of appraisers appointed to appraise the benefits to the property abutting on said street resulting from such improvements did not determine the special benefit or benefits accruing to said lot or lots abutting on said street, resulting to said lot or lots, as a question of fact, but proceeded and apportioned the whole cost and expense of grading said street to the lots abutting thereon; but I do not find that said appraisement or assessment is in any way inequitable or unjust. That the board of appraisers, in making the appraisement and apportionment of the cost of the work of grading Park street, made such assessment on the basis of the contract price for such work. That there is no ordinance of the city of Shawnee fixing the compensation of the city engineer, nor providing extra or other compensation for the engineering work in the grading of streets. That said board of appraisers, in making the apportionment, divided the total cost as given by the engineer by the sum of the number of lineal feet on the two sides of Park street for the space improved, and got the flat rate per lineal foot, then multiplied this sum by the number of lineal feet in each block, which gave the sum for each block. Said board then deducted the sum of 20 per cent. from the sum charged to the blocks at south end of street, and added it to the blocks at the north end, and so on from the succeeding blocks. That said board of appraisers did not determine the benefit to or how much any particular lot or lots were benefited by such grading, nor the per cent. nor proportional benefits to said property. That the plaintiffs are citizens of Shawnee, and knew of said improvements, and permitted said work to be done without objection to the city council, and knowingly received the benefits thereof.

### Conclusions of Law.

"Upon the pleadings and issues in this cause and upon the above findings of fact, I make, return, and file the following conclusions of law:

"(1). That before the mayor and council of the city of Shawnee could lawfully provide for the improvement of the street in controversy in this action, being a street of a city of the first class, and make the cost of such improvement a charge against the abutting property, said council must by resolution declare such improvement necessary, which resolution must be advertised for four consecutive weeks in some newspaper of general circulation in the city, and I conclude that the resolution of the council adopted and approved September 2, 1903, is a good and sufficient resolution for the purpose of providing for the grading of Park street from the north side of Main street to the north line of Dill addition to the city of Shawnee.

"(2) I conclude as a matter of law that it is not necessary, after the passage and publication of the resolution declaring it necessary to grade and improve this street, and after the expiration of the time given for remonstrance against such improvement for the mayor and council to pass an ordinance authorizing such improvement to be made, but that said mayor and council can thereafter proceed to advertise for bids and let said contract.

"(3) I conclude as a matter of law that the method by which the board of appraisers appointed to assess the lots benefited by this grading arrived at said assessement was not the method prescribed by law, and that the report of said appraisers is not as full and complete as could be desired; but I conclude as a matter of law that the report of said board of appraisers, under the statutes of the territory of Oklahoma, is sufficient, and I further find that the failure of the plaintiffs in this action to appear before said council after due notice was given them, and object to the manner of such assessment, estops them from maintaining this suit to enjoin the collection of said taxes, it not appearing that the said assessment is inequitable, unequial, or unjust, or that any one of the plaintiffs have been injured by the method pursued in making said assessment.

"(4) I conclude as a matter of law that the fact that W. M. Davis provided for a discount of 40 per cent. for cash to said lot owners, who desired to take up their warrants before the same went into the hands of the county treasurer, and that said con-

tract contained such provision, does not invalidate said bid or contract, nor render the assessment sought to be enjoined in this action illegal. The bid of W. M. Davis was the lowest bid, and was within the estimate furnished by the city engineer. The abutting lot owners have the opportunity to take advantage of the 40 per cent. discount if they desire.

"(5) I conclude as a matter of law that the assessment sought to be enjoined in this action is a valid assessment, and that the defendants are entitled to a judgment of the court in this case dissolving said injunction, and that the defendants should recover their costs herein expended."

*Wood & Williams,* for plaintiff in error.
*F. H. Reiley* and *W. B. Crossan,* for defendants in error.

WILLIAMS, C. J. (after stating the facts as above). In the language of counsel, "the main contention of plaintiffs in error is that, before the cost of grading streets in cities of the first class in this territory [state] can be assessed against the abutting property and made a legal charge thereon, the improvement must be first authorized, ordered, and provided for by ordinance. Relying on this main contention, appellants in this particular case, in view of the proceedings or lack of proceedings of the mayor and council of the city of Shawnee, further contend that some affirmative action is necessary, either by ordinance, order, or resolution." Plaintiffs insist that the act of 1901 (sections 443-453, Wilson's Rev. & Ann. St. 1903) cannot be reasonably construed as a complete statute upon the question of street improvements, independent of the provisions of chapter 12, Wilson's Rev. & Ann. St., insisting that the act of 1901, which is a later act, shall be construed as merely supplementary to the provisions of said chapter 12, *supra.* However, it is not necessary for the final determination of this cause to determine whether or not an ordinance should have been passed providing for and directing the details of the paving of these streets, after the adoption of the resolution declaring the necessity for the same and causing the publication of the notice, and the failure to file protests.

Counsel have cited the case of *Newman v. City of Emporia,*
32 Kan. 457, 4 Pac. 816, as sustaining their contention that the
adoption of the ordinance is necessary for the making of the im-
provements and levying the taxes, and that, such not having been
done, such acts in having paving done were as to the plaintiffs ab-
solutely void, and could not be made valid by subsequent acts of the
mayor and council as to the parties affected. Section 835, Comp.
Laws Kan.. 1885 (chapter 19, art. 3, § 32), which is the identi-
cal provision that was in effect at the time the decision was ren-
dered in the case of *Newman v. City of Emporia, supra,* provides:

"The cities coming under the provisions of this act in their
corporate capacities are authorized and empowered to enact ordi-
nances for the following purposes, in addition to the other powers
granted by this act: * * * To open and improve streets, ave-
nues and alleys, make sidewalks and build bridges. culverts and
sewers within the city; and for the purpose of paying for the same
shall have power to make assessments in the following manner, to
wit: First. For opening, widening and grading all streets and
avenues and for all improvements of the squares and areas formed
by the crossing of streets, and for building bridges, culverts and
sewers, and footwalks across streets, the assessment shall be made
on taxable real estate within the corporate limits of the city, not
exceeding ten mills on the dollar, for these purposes in any one
year. Second. For making and repairing sidewalks, macadamiz-
ing, curbing, paving and guttering, the assessment shall be made
on all lots and pieces of ground abutting on the improevments, ac-
cording to the front foot thereof."

It is true that in the case of *Newman v. City of Emporia,
supra,* this statute, which is very similar to section 370, Wilson's
Rev. & Ann. St. 1903, was construed by the Supreme Court of Kan-
sas as requiring an ordinance to be adopted before such improve-
ments could be made. Such improvements under said provisions
were *ultra vires* until the ordinance to that end was passed, and
when the mayor and council acted without an ordinance to that
effect having been enacted they were without jurisdiction as to such
matter, and the same could not thereafter be ratified. However,
no such provisions were in force in Kansas as are contained in sec-

tions 415 and 443 to 453, inclusive, Wilson's Rev. and Ann. St. 1903.

The question necessarily arises in this case: Did and could the abutting property owners ratify the acts of the mayor and council of the city of Shawnee in having these improvements made? In the case of *Noel v. City of San Antonio*, 11 Tex. Civ. App. 580, 33 S. W. 266, the court says:

"Recurring to the proposition that the city is estopped, the contract having been executed, from setting up is invalidity, it may be said that as a general rule the doctrine of estoppel applies to corporations and individuals. But it cannot be applied to render valid and binding a contract that the corporation was prohibited from making. The application of the doctrine of estoppel to municipal corporations is confined to cases in which they have the power to contract. But where the act undertaken was, in and of itself, *ultra vires* of the corporation, no act of that body can have the effect to estop it to allege its want of power to do what was undertaken. Bigelow, Estop. 406, 467; *State v. Murphy*, 134 Mo. 548, 31 S. W. 784, 35 S. W. 1132, 34 L. R. A. 369, 56 Am. St. Rep. 515; *Union Depot Co. v. City of St. Louis*, 76 Mo. 393; *Pennsylvania R. Co. v. St. Louis, A. & T. H. R. Co.*, 118 U. S. 290, 6 Sup. Ct. 1094, 30 L. Ed. 83; *Green Bay & M. R. Co. v. Union Steamboat Co.*, 107 U. S. 98, 2 Sup. Ct. 221, 27 L. Ed. 413; *Davis v. Railway Co.*, 131 Mass. 258, 41 Am. Rep. 221."

In case of *Zalesky v. Cedar Rapids*, 118 Iowa, 714, 92 N. W. 657, the court says (quoting from section 779 of the Iowa Code as amended by chapter 27, p. 14, Acts 28th Gen. Assem.):

"They shall have power to provide for the construction, reconstruction and repair of permanent sidewalks upon any street, highway, avenue * * * within the limits of such city or town * * * and to assess the costs thereof on the lots or parcels of land in front of which the same shall be constructed. * * * This cannot be construed otherwise than to mean that the city council is thereby invested with all the necessary authority to make provisions for carrying into effect the power granted. Now, municipal corporations make provision for carrying into effect or discharging the powers and duties conferred by law through the medium of an ordinance. * * * The appellants contend that even conceding the defects to which attention has been called, the same were cured, and a valid levy of

assessment accomplished, by virtue of the resolution of February 15, 1901, and the notice served pursuant thereto, and the further resolution of March 8, 1901. Section 836 of the Code is relied upon as a basis for such contention. Granting that even the chapter of the Code of which such section is a part has application to the matter of construction of sidewalks—a point we do not decide —still there is no merit in this contention of appellants. The defects which may be cured by a relevy of assessment are such only as inhere in the time or manner of the proceeding; the machinery of the law having *once been properly put in motion....* It was not intended that *jurisdictional* defects can be cured by proceedings therein directed. Under the ordinance in question the adoption of a resolution is a prerequisite to any further step being taken. Without that step there is no authority whatever to further proceed. The case is altogether different from one where, having authority to proceed, irregularities and defects in the subsequent proceedings thereafter occur which do not have the effect to take away and substantial rights of a party interested. While having reference to a different section of the statute, yet the principle announced in *City of Chariton v. Holliday*, 60 Iowa, 391, 14 N. W. 775, is applicable. That was a case in which recovery was sought under the provisions of section 479, Code 1873, which provides, in effect, that under certain specified conditions a recovery may be permitted for public improvements, notwithstanding informality and irregularity in the proceedings under which such improvements were made  In the course of the opinion it was said: "The irregularity or defect under which this section can be disregarded must, we think, be a mere error or omission to do something which in no manner affects the *jurisdiction* of the city. It is fundamental that, unless jurisdiction has been acquired, the proceedings of all courts are void, and this must be so as to municipal corporations.' In that case, as in this, the lot owner had the right, under the ordinance, to construction the walk if he saw proper. But this, it is said, he could not do until one was ordered. Under the ordinance it was essential that a *resolution* should be passed by the council, ordering the construction of the sidewalk in question. There could be no authority to make an assessment, and consequently no authority to reassess, especially as this was attempted to be done long after the walk had been actually constructed by the city."

In the case of *McLauren v. City of Grand Forks,* 6 Dak. 397, 43 N. W. 710, the court says:

"The city council only had such authority as was conferred by the charter of said city, and could exercise the powers granted only in the manner and according to the conditions imposed by the law. They only had jurisdiction to act and bind the city by what they did while acting within the provisions of the law authorizing them to act at all. Except in the instances provided by the charter itself, the officers of the city were powerless to legally grade the street. The charter provides that when the mayor and council shall deem it necessary to grade any street they shall declare by resolution that the grading of such street is necessary. It is only when necessary that the law contemplates such improvements shall be made, and whether or not the proposed improvement is necessary is to be determined by the mayor and council, and such determination is to be evidenced by a resolution to that effect. Until this is done they have no power to act, and are without jurisdiction in the premises. The lawmaking body evidently intended that before the mayor and council entered upon making improvements on behalf of the city, for the expense of which private property was to be burdened, the necessity therefor should be considered and determined by them in their official capacity, and the evidence preserved by proper record. This is an important provision prescribing the preliminary steps necessary when it is proposed to make public improvements, and, if disregarded or omitted, all subsequent proceedings are invalid, and of no effect. *Hoyt v. City of Saginaw,* 19 Mich. 39, 2 Am. Rep. 76; *White v. Stevens,* 67 Mich. 33, 34 N. W. 255. The other conditions imposed by the statute are equally important and necessary of performance. It having been determined that the proposed improvement is necessary, the resolution so declaring is to be published for a stated period, and within a limited time thereafter, defined by the charter, the owners of the property liable to assessment for the expenses of such improvement may protest against it. These provisions of the charter were intended to preserve to the owners of the property to be affected by the proposed improvement the right for any reason they may have to protest against the making of it and to demonstrate that it was not necessary; that the benefits which would flow from it were not commensurate with its costs, etc. The giving of the notice required

by law was a step essential to be taken by the city authorities before they could legally enter upon the work of making the improvement. It was jurisdictional."

In the case of *Barker v. Commissioners*, 45 Kan. 696, 26 Pac. 591, the court says:

"In view of other fatal defects it is not now necessary to pass upon the question as to whether or not the omission in the petition to state 'the time for which assessments in payment thereof are to be made,' as required by the second section of the act, is *jurisdictional*, or a mere irregularity that does not deprive the county board of the power to act. * * * The same facts are urged as an estoppel against the plaintiff in error as in the other two streets. Some of these facts relied on to estop him are sustained by evidence. The others are not. We have considered these findings in the Tenth street matter. They apply to all three of these streets taken together, and are not made specific as to each street. These attempts to exercise powers not granted in terms or fairly impied by the act under the assessments levied on the land of the plaintiff in error for the improvement of Fifth street are void, and there are no sufficient facts pleaded or found to estop him from asserting the jurisdictional defects enumerated."

Section 680 of the Annotated Code of Iowa (1897) provides:

"Municipal corporations shall have power to make and publish from time to time, ordinances, not inconsistent with the laws of the state, for carrying into effect or discharging the powers and duties conferred by this title, and such as shall seem necessary and proper to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort and convenience of such corporations and the inhabitants thereof, and to enforce obedience to such ordinances by fine not exceeding one hundred dollars, or by imprisonment not exceeding thirty days."

Section 810, Annotated Code of Iowa (1897) provides:

"When the council of any such city shall deem it necessary, or available to make or reconstruct any street improvement or sewer authorized in this chapter, it shall, in a proposed resolution declare such necessity or advisability, stating the kind of material proposed to be used and the method of construction whether abutting property will be assessed, and in case of sewers, the kind and size, and what adjacent property is proposed to be assessed there-

for, and in both cases designate the location and terminal points thereof, and cause twenty days' notice of the time when said resolution will be considered by it for passage to be given by four publications in some newspaper of general circulation published in the city, the last of which shall not be less than two nor more than four weeks prior to the time fixed for its consideration, at which time the owners of the property subject to assessment for the same may appear and make objection to the contemplated improvement or sewer and the passage of said proposed resolution, at which hearing the same may be amended and passed, or passed as proposed."

Section 811 of the same Code further provides:

"Upon compliance with the preceding section, the council may, by ordinance or resolution, order the making or reconstruction of such street improvement or sewer, but the vote shall be by yeas and nays, and entered of record, and the record shall show whether the improvement was petitioned for or made on the motion of the council."

Section 407 of Wilson's Revised and Annotated Statutes of 1903 is substantially the same as section 680 of the Iowa Code, *supra.* In the case of *Martin v. City of Oskaloosa,* 126 Iowa, 685, 102 N. W. 530, the court says:

"We are of the opinion, however, that no general ordinance was essential to enable the city to order the improvement and take the steps necessary to a valid assessment. It certainly cannot be true that where the entire procedure is regulated by statute, and nothing is left to be determined by general ordinance, the city can derive any greater authority from an ordinance which simply re-enacts the provisions of the statute. All that can be essential in such a case is that the city take the steps provided by the statute, and, if these steps are taken as required, the assessment will certainly be valid."

Section 76, c. 19, p. 176, of the General Statutes of Kansas of 1868, provides:

"Whenever it shall become necessary in order to raise sufficient funds for the purchase of a school site or sites, or to erect a suitable building or buildings thereon, it shall be lawful for the board of education in every city coming under the provisions of this

act, with the consent of the council, to borrow money, for which they are hereby authorized to issue bonds, bearing interest at the rate of not more than ten per cent., which bonds shall be redeemed in not more than twenty years from their date; and the said board of education is hereby authorized to sell said bonds at not less than seventy-five cents on the dollar."

In the case of *Board of Education v. De Kay*, 148 U. S. 591, 13 Sup. Ct. 706, 37 L. Ed. 573, Justice Brewer, speaking for the court, says:

"Now, it is insisted that consent could only be given by an ordinance, and not by resolution, and in support thereof the case of *Newman v. Emporia*, 32 Kan. 456, 4 Pac. 815, is cited. * * * The general rule is that, where the charter commits the decision of a matter to the council and is silent as to the mode, the decision may be evidenced by a resolution, and need not necessarily be by an ordinance. * * * Nor is there anything in the case in 32 Kan. 456, 4 Pac. 815, in conflict with this. That simply holds that, when a charter holds that certain things be done by ordinance, they cannot be done by resolution. In this act incorporating cities of the second class there is nothing which either in terms or by implication requires that the consent of the city council be given only by ordinance. A resolution was, therefore, sufficient."

"Section 6 of the act to provide for work upon the streets, approved March 18, 1885, (St. 1885, p. 151, c. 153), which provided 'that the city council may by general ordinance prescribe general rules directing the superintendent of streets and the contractor as to the materials to be used, and the mode of executing the work on all contracts thereafter made,' is permissive, and not mandatory upon the city council, and the prescribing of general rules is not a condition precedent to the jurisdiction of the council to order a street improvement, where both the order and the contract for doing particular work sufficiently specifies the material to be used and the mode of doing the work." (*Santa Cruz Rock Pavement Co. v. Heaton*, 105 Cal. 162, 38 Pac. 693.)

In the case of *National Tube Works Co. v. City of Chamberlain*, 5 Dak. 54, 37 N. W. 761, the court says:

"This is not strictly a question of *ultra vires*, for it is admitted that the city council has the power, under the charter, to build and maintain a system of waterworks and contract for that pur-

pose. But counsel for appellant insist that before such authority could be exercised it was necessary to pass an ordinance for that purpose. This might be true, if the city charter put such a limitation on the powers of the council on this subject, expressed or implied. After a careful examination of that instrument we find no such limitation, and therefore conclude that it was unnecessary that an ordinance should have been enacted. *Gas Co. v. San Francisco,* 9 Cal. 453; *Green v. City of Cape May,* 41 N. J. Law, 45; *City of Quincy v. R. R. Co.,* 92 Ill. 21; *Messenger v. City of Buffalo,* 21 N. Y. 196. But, conceding that an ordinance of the city council should have preceded this contract, and that there was, for this reason, a technical want of power to make it, still the appellant received and retained the property of the respondent, furnished at its instance and request, and enjoyed the use and benefit thereof. It cannot, therefore, be heard to object that it was not empowered to do what it promised in return simply because the manner of entering into the contract was not strictly in accordance with the mode prescribed by its charter, but not *ultra vires* as to its provisions. *Hitchcock v. Galveston,* 96 U. S. 341, 24 L. Ed. 659; *Moore v. Mayor,* 73 N. Y. 238, 29 Am. Rep. 134; *Board, etc., v. Railway Co.,* 47 Ind. 407, 17 Am. Rep. 702. In the case last cited the court says: 'Although there may be a defect of power in a corporation to make a contract, yet if a contract made by it is not in violation of its charter or any statute prohibiting it, and the corporation by its promise induced a party, relying on the promise and in the execution of the contract, to expend money and perform his part thereof, the corporation is liable on the contract.' "

There are authorities that go further in recognizing the doctrine of estoppel, the leading one of which is the case of *Tones' Executors v. City of Columbus,* 39 Ohio St. 281, 48 Am. Rep. 438; 3 Amer. & Eng. Corporation Cases, 656, wherein the court said:

"We have already seen that a petitioner for the improvement has the right to rely on the city council proceeding legally and regularly upon his petition. Certainly one who is not a petitioner has the same right. There can be no waiver of this defect, and no estoppel which will prevent him from asserting it after the work is completed, if he is ignorant of it before the work is completed, unless, indeed, circumstances exist which made it his duty to inform himself, or show his ignorance to be culpable. Just how this knowledge is to be shown it is not easy to say. That it may

be shown by circumstances, in this as in any other case where knowledge is an essential element, is no doubt true. Infirmities in the public statute he may be presumed to know, but not in the proceedings of the council or municipal officers, whose acts, as we have seen, he has the right to presume are regular. Undoubtedly those petitioning in this case for the privilege of the act, or voting for the commissioners, or acting as commissioners, or taking any active part under the statute in causing the improvement to be made, may be presumed to know that the improvement is being made, and that its cost is to be assessed under the provisions of the statute, upon abutting property. This presumption, in even these respects, cannot extend to those who have taken no such part, but are charged with silence only. When the above-named requirements are found, and it is shown that the property owner has been benefited by the improvement, at least to the extent that he has been thus benefited, he will be estopped from denying his liability to pay. It then became his duty to act upon his rights, before the city, for his benefit, expended its money in making the improvement upon the faith that he would pay his just share thereof. Had he spoken then, all that he now asserts as illegality would have been corrected, or the expenditure stopped; or, if not, then it was not at his peril that the expenditure was made. It was as much his duty under these circumstances to make known his objections and assert his rights as if he saw another person making improvements and expending money for his benefit under the erroneous impression that he was liable and expected to pay for the same. If, with knowledge of the facts, he failed to speak, but allowed the improvement and expenditure to be made, he would not be permitted to enjoy the benefits conferred and refuse to pay for them. He would be estopped to deny his liability to pay the fair value of what he received. There is no material difference, under these circumstances, whether the improvement is directly on the land of the owner, or upon the highway upon which such land abuts, nor that the expenditure was made by the city and not by an individual. The presumption that the city was acting in good faith, the owner's knowledge that they were acting without authority, that the improvement was for his benefit, that it was made upon the faith that he would pay for it, demanded of him, in fairness, that he make known his rights and intentions then, or afterwards keep his peace. In either case, to the extent that the

benefit has accrued to him, equity will require him to make compensation.

"Whether the assessment itself is to be considered a fair apportionment of the benefits conferred, even *prima facie* as against an owner estopped by his silence, or whether the limitation upon the power of assessment to 25 per centum of the value of the property, found in the municipal code, is applicable to this case, are questions which are not now material for us to consider. It is safe to assume, however, that no application of an equitable rule will be made that will operate inequitably. It is not so much in cases of this kind that the estoppel, which arises from silence, gives validity to an invalid proceeding or contract, as that the party *estopped* will not be permitted to repudiate it, except on equitable terms. *Am. Dock & Imp. Co. v. School Trustees,* 35 N. J. Eq. 181. The inequity exists in claiming that the benefits which accrued to him thereby shall be enjoined without compensation. The maxim, '*ex aequo et bono,*' should govern. * * * · I am not quite able to see why, if inaction or silence, with knowledge, works an estoppel where a permanent improvement of a public street is made notwithstanding the tribunal had not jurisdiction to order it, by reason of the nonexistence of a condition precedent fact, it does not work an estoppel, although the tribunal had no jurisdiction to order the improvement, by reason of the unconstitutionality of the statute under which such order was made, unless, indeed, the acts are *per se* illegal or *malum prohibitum.* In either case there was a want of power in the tribunal *ab initio.* Where the infirmity of the act of the corporation is that it was *ultra vires,* but not prohibited by the charter or public law, an estoppel may arise, either from acts or inaction, which will prevent the corporation, a stockholder, or an individual dealing with it from asserting such infirmity. When, however, it is a question not between the corporation and individuals, but the public at large is interested, as in the case of an act *per se* wrong, or prohibited, no act can give it validity. See *Hitchcock v. City of Galveston,* 96 U. S. 341, 24 L. Ed. 659, and cases cited; *Kent v. Quicksilver Mining Co.,* 78 N. Y. 184

"In the latter case the rule is thus stated by Folger, J.: 'In the application of the doctrine of *ultra vires,* it has to be borne in mind that it has two phases—one where the public is concerned, and one where the question is between the corporate body and the stockholders in it, or between it and its stockholders, and third

parties dealing with it, and through it with them. When the public is concerned to restrain a corporation within the limit of the power given to it by its charter, and assent by the stockholders to the use of the unauthorized power by the corporate body will be of no avail. When it is the question of the right of the stockholder to restrain the corporate body within its express or incidental powers, the stockholder may in many cases be denied on the ground of his express assent, or his intelligent, though tacit, consent to the corporate action. A corporation may do acts which affect the public to its harm, inasmuch as they are *per se* illegal, or are *malum prohibitum*. Then no assent can validate them. It may do acts thus illegal though there is a want of power to do them, which affect only the interest of the stockholders. They may be made good by the assent of the stockholders, so that strangers dealing in good faith with the corporation will be protected in a reliance upon those acts. *Bissel v. Mich. So. R. R. Co.*, 22 N. Y. 269; 2 L. R. (Exch.) 390; *Whitney Arms Co. v. Barlow*, 63 N. Y. 63, 20 Am. Rep. 504; L. R. (7 Com. Pl.) 43; L. R. (H. of L.) 249. * * * And where third parties have dealt with the company, relying in good faith upon corporate authority to do an act, there is not needed that there be an express assent thereto on the part of the stockholders to work an equitable estoppel. Their conduct may have been such, though negative in character, as to be taken for an acquiescence in the act, and, when harm would come to such third parties if the act were held invalid, the stockholders are estopped from questioning it. We suppose acquiescence, or tacit assent, to mean the neglect to promptly and actively condemn the unauthorized act, and to seek judicial redress, after the knowledge of the committal of it, whereby innocent parties have been led to put themselves in a position from which they cannot be taken without loss. It is the doctrine of equitable estoppel which applies to members of associated or corporate bodies, as well as to individuals.'

"We presume the estoppel in such case would apply as well to third persons dealing with the corporation and receiving the benefit of the *ultra vires* act or contract as to members of the corporation, and would arise from the same facts. It may be suggested here that while there was a want of power to order this improvement under the act in question, and perhaps a total want of power to issue the bonds, there was ample power vested in the corporation to make the improvement and assess the cost of it

under valid existing law; and, whatever may be said about the rights of the holders of the bonds thus issued without authority, it does not necessarily follow that the question between the city and the property holders, or the contractors doing the work, is the same. *Hitchcock v. City of Galveston, supra.* Several of the plaintiffs allege that they were married women, owning in their own right and as their separate property the lots of lands abutting upon the street upon which the assessment is charged. The improvement in question, being for the benefit of such separate property and relating thereto, and the benefits accruing therefrom attaching to such separate property, the rules heretofore announced apply to them as fully as if they were *femes sole.* As such owners they were vested with the full right to petition, to vote, and to act precisely as any other owner, and whatever would act as an estoppel, were they sole, will, with respect to such separate property, have the same effect notwithstanding their coverture."

Section 348, Wilson's Rev. & Ann. St. 1903, provides that "the powers granted to and conferred upon cities of the first class shall be exercised by the mayor and council of such cities as provided by law." Section 370, Wilson's Rev. & Ann. St. 1903, provides that "cities coming under the provisions of this act in their corporate capacities, are authorized and empowered to enact ordinances for the following purposes, in addition to the other powers granted by law." One of those purposes is for bringing streets to grade, and for paving, macadamizing, curbing, and guttering all streets, avenues, and alleys, the assessment to be made for each block separately on all lots and pieces of ground, etc. Now, prior to the enactment of section 415, Wilson's Rev. & Ann. St. 1903, by the Legislature of Oklahoma Territory in the year 1895, the sole power to pave and macadamize streets was by virtue of the passage of an ordinance for that purpose; but since the enactment by the Legislature in 1895 of said section 415, Wilson's Rev. & Ann. St. 1903, identically the same, to the extent quoted, as section 444 of Wilson's Rev. & Ann. St. 1903, it is provided:

"When the city council shall deem it necessary to grade, pave, macadamize, gutter, drain or otherwise improve any street, alley,

avenue or lane, or any part thereof, within the limits of the city, for which a special tax is to be levied as herein provided, such council shall by resolution declare such work or improvement necessary to be done, and such resolution shall be published for four consecutive weeks in some newspaper of general circulation in the city; and if the owners of a majority of lots or parcels of land liable to taxation therefor, shall not, within twenty days thereafter, file with the clerk of said city, their protest against such improvements, then such council shall have the power to cause such improvements to be made and to contract therefor and to levy the taxes as herein provided."

The declaring by resolution and the publication of the same for four consecutive weeks in some newspaper of general circulation in the city is a condition precedent to jurisdiction, and, when that is done without protest on the part of the property owners to be affected, then the council shall have the power to cause such improvement to be made. Prior to the enactment of that section cities were authorized and empowered to enact ordinances for the purposes of paving, and, of course, when no ordinance was enacted, there was no power in the council to have it legally done. At that time the passage of the ordinance was a condition precedent to the mayor or council having jurisdiction or power to cause such improvements to be made. It would be the better practice for the council to direct all such acts by first passing an ordinance or resolution; but, as before stated, it is not necessary to determine as to whether or not an ordinance is required, in order to decide this case.

Section 444 further contains a proviso to the effect:

"The property owners on any street of not less than two thousand feet in length, may, by petition signed by a majority of such property owners, request the city council to pave such streets or part of street with any material used for standard paving, to be designated in such petition. And it shall thereupon be the duty of the city council to proceed to pave such street in accordance with the prayer of such petition, and no *resolution or notice of intention to pave or publication thereof* shall be necessary."

This provision, when considered with the other sections of the act of the Oklahoma Legislature of March 5, 1901, strongly indicates that no ordinance was required after the resolution declaring the necessity therefor had been duly passed and publication thereof made, as required by law. But how could the property owners be injured by the fact that no ordinance directing the paving to be done was passed? Had the ordinance been passed, how would it have benefited the abutting property owners? The declaring of the necessity by resolution and the publication of the same was for the benefit of the abutting property owners. So that if a majority of such property owners did not desire the improvements to be made, and were not willing to be taxed therefor, within 20 days they would be permitted to file with the clerk their protests and thereby arrest such improvement. In other words, said section 444, in providing for this resolution and the publication thereof, and for the filing of protest by the majority of abutting property owners, provided a referendum for such property owners as to such proposed improvement. And further on the proviso therein contained provides for an initiative; that is, where a majority of such property owners requested the city to pave such streets or parts of streets with any material used for standard paving by designating the same in such petition, that thereupon it be the duty of the city council to proceed to pave such street in accordance with the prayer of such petition, and that no notice of publication of the resolution should be necessary. This affords, as to the kind of material, the exercise of the principle of the initiative.

Section 445, Wilson's Rev. & Ann. St. 1903, provides that:

"The abutting lots, pieces or parcels of ground shall be charged with the cost of making any improvements herein specified, to the centre of the block, where the abutting way is on the exterior of the block, and to the exterior of the block where the improvement is made on an alley or other public way in the interior of such block, each quarter block shall be charged with the due proportion of paving both the front and side streets of such

block, together with the area found by intersections and alley crossings, which cost shall be apportioned among the lots and subdivisions of such quarter block according to the benefits to be assessed to each lot or parcel. If any portion of the improved district shall not be platted into lots and blocks, the council shall include such ground in the proper quarter block district for the purpose of appraisement and assessment as herein provided."

When the resolution declaring the necessity of such improvements and notice was given, there could be no other presumption or fact carried to the abutting property owners than that such pavement, when done, should be paid by a special tax levied upon them. No protest of any kind was lodged with the clerk against such proposed improvement, and the referee found: "That the plaintiffs, as citizens of Shawnee, received notice of said improvement, and permitted said work to be done without objection to the city council, and knowingly received the benefits thereof." Under the authorities heretofore cited they are estopped, and will not be heard to question the authority to have such improvements made.

As to assessment: In the case of *French v. Barber Asphalt Paving Co.,* 181 U. S. 344, 21 Sup. Ct. 632, 45 L. Ed. 879, the court says:

"This array of authority was confronted in the courts below with the decision of this court in the case of *Norwood v. Baker,* 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443, which was claimed to overrule our previous cases, and to establish the principle that the cost of a local improvement cannot be assessed against abutting property according to the frontage, unless the law under which the improvement is made provides for a preliminary hearing as to the benefits to be derived by the property to be assessed. But we agree with the Supreme Court of Missouri in its view that such is not the necessary legal import of the decision in *Norwood v. Baker,* 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443. That was a case whereby, by a village ordinance apparently aimed at a single person, a portion of whose property was condemned for a street, the entire cost for opening the street including not only the full amount paid for the strip condemned but the cost and expenses of the condemnation proceeding, was thrown upon the abutting property of

the person whose land was condemned. This appeared both to the court below and to a majority of the judges of this court to be an abuse of the law, an act of confiscation, and not a valid exercise of the taxing power. This court, however, did not affirm the decree of the trial court awarding a perpetual injunction against the making and collection of any special assessments upon Mrs. Baker's property, but said: 'It should be observed that the decree did not relieve the abutting property from liability for such amount as could be properly assessed against it. Its legal effect, as we now adjudge, was only to prevent the enforcement of the particular assessment in question. It left the village, in its discretion, to take such steps as were within its power to take, either under existing statutes or any authority that might thereafter be conferred upon it to make a new assessment upon the plaintiff's abutting property for so much of the expense of the opening of the street as was found upon due and proper inquiry to be equal to the special benefits accruing to the property. By the decree rendered the court avoided the performance of functions appertaining to an assessing tribunal or body, and left the subject under the control of the local authorities designated by the state.'

"That this decision did not go to the extent claimed by the plaintiff in error in this case is evident, because in the opinion of the majority it is expressly said that the decision was not inconsistent with out decisions in *Parsons v. District of Columbia,* 170 U. S. 45, 56 18 Sup. Ct. 521, 42 L. Ed. 943, and in *Spencer v. Merchant,* 125 U. S. 345, 357, 8 Sup. Ct. 921, 31 L. Ed. 763. It may be conceded that the courts of equity are always open to afford a remedy where there is an attempt, under the guise of legal proceedings, to deprive a person of his life, liberty, or property without due process of law. And such, in the opinion of a majority of the judges of this court, was the nature and effect of the proceedings in the case of *Norwood v. Baker.* But there is no such state of facts in the present case. Those facts are thus stated by the court of Missouri: 'The work done consisted of paving with asphaltum the roadway of Forest avenue, in Kansas City, 36 feet in width, from Independence avenue to Twelfth street, a distance of half a mile. Forest avenue is one of the oldest and best improved residence streets in the city, and all of the lots abutting thereon front the street and extend therefrom uniformly the depth of an ordinary city lot to an alley. The lots are all im-

proved and used for residence purposes, and all of the lots are substantially on the grade of the street as improved, and are similarly situated with respect to the asphalt pavement. The structure of pavement along its entire extent is uniform in distance and quality. There is no showing that there is any difference in the value of the lots abutting on the improvement.' What was complained of was an orderly procedure under a scheme of local improvements prescribed by the Legislature and approved by the courts of the state as consistent with constitutional principles."

In this case the procedure was inaugurated conformably to the Kansas City charter by the adoption of a resolution by the common council of the city declaring the work of paving the street, and with a pavement of a defined character, to be necessary, which resolution was first recommended by the board of public works of the city. This resolution was thereupon published for 10 days in the newspaper doing the city printing. Thereafter the owners of a majority of front feet on that part of the street to be improved had the right, under the charter, within 30 days after the first day of publication of such resolution to file a remonstrance with the city clerk against the proposed improvement, and thereby divest the common council of the power to make the improvement, and such property owners had the right, by filing in the same period a petition so to do, to have such street improved with a different kind of material or in a different manner from that specified in the resolution. In this instance neither such a remonstrance nor petition was filed, and the common council, upon the recommendation of the board of public works, enacted an ordinance requiring the construction of the pavement. The charter requires that a contract for such work shall be let to the lowest and best bidder. Thereupon bids for the work were duly advertised for, and, the plaintiff company being the lowest and best bidder therefor, a contract was on July 31, 1904, entered into between Kansas City and the plaintiff for the construction of said pavement. The contract expressly provides that the work shall be paid for by the issuance of special tax bills according to the provisions of the Kansas City charter, and that the city should

not in any event be liable for or on account of the work. The cost of the pavement was apportioned and charged against the lots fronting thereon according to the method prescribed by the charter, which is that the total cost of the work shall be apportioned and charged against the lands abutting thereon according to the frontage of the several lots or tracts of land abutting on the improvement. The charge against each lot or tract of land was evidenced by a tax bill. The tax bill representing the assessment against each lot was by the charter made a lien upon the tract of land against which it was issued, and was *prima facie* evidence of the validity of the charge represented by it. Such lien can be enforced only by a suit in a court of competent jurisdiction, against the owners of the land charged. No personal judgment was authorized to be rendered against the owner of the land. The right was expressly conferred on the owner of reducing the amount of the recovery by pleading and proving any mistake or error in the amount of the bill, or that the work was not done in a good and workmanlike manner. The judgment was for the plaintiff for the amount due on the tax bill and for the enforcement of its lien. See statement of facts in *Barber Asphalt Paving Co. v. French*, 158 Mo. 534, 58 S. W. 955, 54 L. R. A. 492.

Every person, as a member of a municipal community, thereby enjoying the incident benefits, takes notice of the accompanying obligations. Streets are to be laid out, graded, paved, and lighted. The constabulary must be maintained to enforce peace and preserve order. Sewerage systems and water supplies must be provided. No one is entitled to enjoy these advantages and to be permitted to successfully contend that the laws, ordinances, and resolutions under which such benefits and advantages are created, regulated, and controlled, are invalid, and thereby escape the resultant burdens. The citizen of the modern municipality and property owner thereof take notice of such necessities. He owes his personal service to maintain order and promote the public good in his municipality, just as he owes to the nation his service to protect against hostile encroachments and invasion. No man can

expect to have property in cities, abutting on public thoroughfares and streets, without bearing the burdens of special taxation to maintain grades, build sidewalks, and macadamize and pave the streets; and he acquires his property with the full knowledge of the fact that the legislative power of the state can be exercised to levy and provide for an assessment or special tax for such improvements. The legislative authority of the state, or, when properly authorized to be exercised, the municipality, may determine over what territory to apportion the burdens, and the whole subject of taxing districts belongs to the Legislature, and the authority may be left to local boards or bodies. *County of Mobile v. Kimball*, 102 U. S. 703, 26 L. Ed. 238; *Bauman v. Ross*, 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270; *Shoemaker v. U. S.*, 147 U. S. 282, 13 Sup. Ct. 361, 37 L. Ed. 170. Also it is within the power of the Legislature to conclusively determine in advance what improvements shall be taxed against certain districts, and it is presumed that the Legislature has determined in advance what property shall be benefited to the extent of the cost of such improvement. *French v. Barber Asphalt Co.*, 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879; *Paulsen v City of Portland*, 149 U. S. 30, 13 Sup. Ct. 750, 37 L. Ed. 637; *Meier v. City of St. Louis*, 180 Mo. 391, 79 S. W. 955; Cooley on Taxation (3d Ed.) vol. 2, p. 1257; *Harton v. Town of Arondale*, 147 Ala. 458, 41 South. 935.

There is no proof offered by plaintiffs that their abutting property is assessed for a greater proportion than same would have been, had the question of benefits to such lots been fully inquired into by the appraising board of the city council. Their finding, when approved by the council, is presumed to be correct. Cooley on Taxation (3d Ed.) col. 2, p. 1258. The referee's finding as to this matter was as follows: "But I do not find that said appraisement or assessment is any way inequitable or unjust." The burden is upon the party seeking relief to show that he is entitled to same and has adopted the appropriate remedy. *City of Spokane v. Browne*, 8 Wash. 317, 36 Pac. 26; *McHenry v. Selvage et al.*, 99 Ky. 232, 35 S. W. 645; *Meier v. City of St. Louis et*

*al.*, 180 Mo. 391, 79 S. W. 955; *Matthews v. Kimball et al.*, 70 Ark. 451, 66 S. W. 651, 69 S. W. 547; *Morse v. City of Omaha*, 67 Neb. 427, 93 N. W. 734; *Clinton v. City of Portland*, 26 Or. 410, 38 Pac. 407; *Portsmouth Savings Bank et al. v. Omaha*, 67 Neb. 50, 93 N. W. 231; Cooley on Taxation, p. 1255.

There appearing no reversible error in the record, the judg‐ment of the lower court is affirmed.

All the Justices concur.